# Richmond.

## Ford v. Euker.

### April 25th, 1889.

Absent, Richardson, J.

1. Specific performance— *When granted.*—Specific performance is not a matter of right in either party. It will be granted only when the contract is clear, distinct, and mutual. If it will work injustice, the party will be left to his action for damages. Generally he should not have been backward awaiting change of circumstances so as to enforce or abandon the contract, as may be most advantageous.

2. Idem—*Contract waived—Case at bar.*—Parties contracted for sale and purchase of a certain lot. Later, they agreed that vendor should sell that lot and another to vendee's son at a different price, with right to vendor to reconveyance of second lot within a fixed time: *held,* first contract being waived, specific performance could not be decreed.

3. Idem.—Vendor's wife refused assent to the sale, and he declined to proceed with it. Vendee sued for damages. After nearly two years, when the lots had appreciated in value, improvements having been made thereon, vendee sued for specific performance, proposing to accept a conveyance subject to the wife's contingent dower rights: *held,* right to specific performance was waived.

4. Idem— *Want of mutuality.*—Vendee's son, not having by himself or any one for him, executed the contract, vendor could not have compelled him to perform the contract. Specific performance for his benefit can not be compelled.

Appeal from decree of chancery court of city of Richmond, rendered June 9, 1888, in the cause of A. J. Ford against Louis Euker, brought for the specific performance of a contract for the sale of real estate for the benefit of the plaintiff's son,

A. J. Ford, Jr. The relief sought was denied and the bill dismissed with costs. Complainant obtained an appeal. Opinion states the case.

*John S. Wise* and *Jos. Christian,* for the appellant.

*Meredith & Cocke,* for the appellee.

LACY, J., delivered the opinion of the court.

This suit was instituted by the appellant to compel specific performance by the appellee of a contract dated August 15th, 1884, for the sale of a lot of land.

On the 11th of August Ford offered to buy of the appellee, Euker, sixty feet on Broad street, between Seventh and Eighth streets, running back one hundred and thirty-six and one-half feet, at $200 per front foot, to be paid for by the assumption of a debt secured thereon of $12,000. On the 15th of August Euker accepted the offer in writing. A few days afterwards, by a writing, not dated, the same contracting parties made another more formal agreement as to this lot of sixty front feet · and twenty more front feet adjoining, by which it was mutually agreed that the first lot, the subject of the first agreement, and the other lot adjoining, of twenty feet, should be sold by Euker to A. J. Ford, Jr., the son of the appellant, Ford, at a *different* price, and the right was reserved to Euker until the 1st day of July, 1889, to pay to Ford $1,333 34, and to have a reconvey-· ance of the twenty-foot lot by Ford to him. Euker's wife not having been consulted, being absent, upon her return to the city refused her consent to the agreement, and Euker declined to proceed further in the matter, and in March, 1885, the appellant instituted an action at law for damages against Euker. This suit was not tried, and in December, 1886, the property mentioned in the agreement having greatly increased in value— stated in the evidence at $3,000—the appellant filed his bill for

specific performance of the contract of August 15th, 1884, for the benefit and at the costs of A. J. Ford, Jr., and offered to accept a decree for a deed from Euker, subject to the contingent right of dower of Mrs. Euker, and to dismiss his common law suit. Euker answered that after the lapse of twenty-one months, and after the institution of an action for damages, and after the land had greatly increased in value, and after he had erected valuable improvements on the property, and expended large sums in furnishing the buildings, and had paid $2,000 in interest on the lien and in taxes on the land, Ford could not, under such changed circumstances, occurring during his delay, now equitably demand specific performance of the contract, and must look for redress alone to his action for damages. Depositions were taken in the cause, and at the hearing the chancery court dismissed the bill, and Ford appealed.

This decree, under the circumstances, was plainly right. In the first place, Ford could not be entertained in a suit to enforce the contract of the 15th of August, he having procured and become a party to another agreement a few days afterwards, by which it was agreed that this land should be conveyed to another person. The vendee was changed, the tract or parcel of land was changed, the purchase price was changed; and the vendee in the first agreement agreed to all these changes ·by signing the second contract. By the second contract the rights of Ford under the first were waived, yet the suit was brought on the first contract in the name of the vendee in the second ·contract. Neither A. J. Ford nor any other person could require specific performance of the contract of August 15, 1884, it having been renounced by the parties thereto. In the next place, when Euker refused or was unable to fully perform the contract, because of his wife's refusal to unite in the deed, Ford did not at once seek the specific enforcement of the same, did not offer as now to waive the wife's signature, but instituted an action for damages, and after the value of the pro-

perty had been greatly enhanced by time and a rising market, and valuable improvements put upon the same, changed his demands to suit the changed circumstances, and, in view of these, asked a specific execution by the vendor, not of the contract as made with him, nor as made with A. J. Ford, Jr., but, releasing the twenty-foot lot, because of the option until July 1st, 1889, reserved by Euker, sought specific execution as to the sixty-foot lot only.

It does not appear that Ford ever offered to pay the purchase price in discharge of the lien, or that he ever, in the name of A. J. Ford, Jr., offered or manifested any anxiety on the subject until the circumstances had all changed. And, moreover, it does not appear upon what principle Euker could have compelled A. J. Ford, Jr., to perform on his part the act of executing the contract by A. J. Ford, Jr., or by his agent or attorney or other person for him, having been entirely omitted. A. J. Ford, Senior, signed and so consented that the contract might be made with another, and his own contract for the same contract cancelled, but any execution on the part of A. J. Ford, Jr., seems to have been regarded as wholly immaterial.

If Euker had sought to compel specific performance of this contract, he could have compelled nothing as against the vendee, because he had agreed to nothing, either directly or indirectly, the contract not being executed by him, nor by any agent for him. If Euker had so sought to compel A. J. Ford to perform, he would have been without remedy, because, by its terms, the contract was not with him.

But if A. J. Ford could be considered as identical with A. J. Ford, Jr., or if he could be held to be the authorized agent of A. J. Ford, Jr., neither of which is claimed, still the decree of the chancery court was right. Specific performance cannot be considered as a matter of right in either party. It does not proceed *ex debito justitiæ*, but is a matter of sound and reasonable discretion, which governs itself by general rules and prin-

ciples, but withholds or grants relief according to the circumstances of each particular case where these general rules and principles will not furnish any exact measure of justice between the parties. All applications to the court to decree specific performance must depend upon the circumstances of the case, governed by the established principles of the court. The contract must be clear and distinct; it must be mutual. If specific performance would work injustice, a party will be left to his action for damages. It is indeed generally essential that the party seeking a specific performance should not himself have been backward; that he should not have held off *until circumstances may have changed*, or kept himself aloof so as to enforce or to abandon the contract as events might prove most advantageous.

As Mr. Sugden says: " A party who seeks specific performance must show himself ready, desirous, prompt, and eager." Sug., 279. If A. J. Ford, Jr., was not bound to buy, was Euker bound to convey? Can there be a contract without mutual obligation? Can there be an agreement between two parties which binds one of them absolutely and the other only at his pleasure? 1 Mad. Ch. Pr., 423. Indeed, as equity is never bound to give this relief, so it never will unless the justice of the case, as drawn from all its facts, demands it. Whatever his merits originally, a plaintiff may disentitle himself to relief by an unreasonable and injurious delay in filing his bill. 3 Par. on Con., 416; *Watson* v. *Reid*, 1 Russ. & M., 236; *Hedphy* v. *Hill*, 2 Lim. & S., 29; *St. John* v. *Benedict*, 6 John. Ch. K.; *Jones & Co.* v. *Roberts*, 3 H. & M., 436; *Vail* v. *Nelson*, 4 Rand., 478; 2 Lom. Dig., pp. 72, 100; 2 Min. Inst., 808, 809; *Garnett* v. *Macon*, 6 Call, 333, 334; *Richardson* v. *Baker*, 5 Call, 514; *Cringan* v. *Nicolson*, 1 H. & M., 429; *Alley* v. *Weschampe*, 13 Ves., 225; *Pigg* v. *Carter*, 12 Leigh, 69; *Anthony* v. *Leftwich*, 3 Rand., 245; *Bryan* v. *Loftus*, 1 Rob., 12; *Bowers* v. *Woodson*, 6 Gratt., 78.

There is no just ground upon which, under the circumstances of this case, a decree for specific performance could have been rendered against the appellee, and the decree dismissing the bill was plainly right, and will be affirmed.

DECREE AFFIRMED.