# Staunton.

## NORFOLK & WESTERN RAILWAY CO. V. BOARD OF SUPERVISORS OF CARROLL COUNTY.

### September 9, 1909.

1. COUNTIES—*County Roads—Board of Supervisors—Right to Sue.*
The boards of supervisors of the several counties have the control, supervision, management and jurisdiction over all of the county roads, and are, in this respect, the successors of the former county courts. The board of supervisors of a county may maintain a suit to compel a railroad company to construct a county road which it had contracted with the county court to construct in lieu of a public road taken and occupied by it.

2. HIGHWAYS—*County Roads—Right to Alter—Railroads.*—Under the provisions of section 1094 of the Code of 1887, a railroad company can only alter a public road, or occupy it for its purposes, "whenever it shall have made an equally convenient road in lieu thereof," and its promise to make such new road is only an undertaking to do what the law required it to do before it could take the public road for its purposes. A promise to perform a legal duty does not make it any less a duty, nor does it transform the legal duty into a mere personal obligation.

3. SPECIFIC PERFORMANCE—*Restoring Highway—Railroads.*—A court of equity will compel a railroad company to perform its plain statutory duty of restoring a highway which it has invaded to its former state of usefulness, as a condition to using it for the purposes of its roadbed. A railroad company cannot invade a highway with its track without complying with the law which grants the privilege to do so.

4. HIGHWAYS—*Public Rights—Statute of Limitations—Laches.*—Public highways belong to the State, and the statute of limitations does not run against the rights of the public therein, nor does the doctrine of *laches* apply. As against the government, *laches* cannot be set up as a defense in equity any more than the bar of the statute can at law. Time does not run against the State, nor bar the rights of the public.

5. HIGHWAYS—*Acceptance—Enforced Use—Railroads—Change of County Road.*—Where a railroad company has been permitted to

use a public road for its roadbed upon condition that it construct a new road equally as convenient as the old road, the fact that the public used the new road and that the county authorities, from time to time, worked and repaired it, cannot be construed as an acceptance of the new road in the face of an unequivocal refusal of record by the county court to approve and accept the road as a proper discharge by the railroad company of its obligations. The enforced use of the new road, for which the railroad company is responsible, cannot be invoked as an evidence of its acceptance.

6. Railroads—*Use of Public Highway—New Road—Duty to Construct—Liability of Purchaser of Property Franchises.*—The duty of building a new public road in lieu of a public road taken by a railroad company for its purposes rests upon the railroad company, and, if not performed by it, the responsibility passes, under the statute of this State, to its successor who has purchased its property and franchises, and is bound to perform "all such duties as could have been required of the first company."

7. Specific Performance—*Contract to Build County Road—Railroads.* Where a railroad company has taken possession of and used for its purposes a county road, and has undertaken to build another equally as good and according to certain specifications, a court of equity will compel the performance of its contract.

Appeal from a decree of the Circuit Court of Carroll county. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Phlegar & Powell, D. W. Bolen* and *Theodore W. Reath,* for the appellant.

*W. D. Tompkins* and *Wm. M. Foster,* for the appellee.

Harrison, J., delivered the opinion of the court.

The bill in this case was filed by the board of supervisors of Carroll county for the purpose of compelling the Norfolk and Western Railway Company to perform its alleged obligation to construct a public road up New river from the Wythe county

line to Wilkinson's Forge, in Carroll county, in lieu of a public road upon which the predecessor in title of the defendant company had constructed its railroad. The prayer of the bill was that the defendant railway company be compelled to build the public road, between the points mentioned, in accordance with certain specifications agreed upon by its predecessor with the county court of Carroll county, and in every respect as suitable and useful for the public as the old road which the railroad company had appropriated to its uses; or in the alternative to require the defendant company to restore to the county of Carroll the old highway in the condition in which it was when appropriated by the defendant.

From a decree of the circuit court, requiring the defendant railway company to build the new public road, this appeal has been taken.

The record shows that a public road ran through the county of Carroll, along the northwestern bank of New river, to the Grayson county line, which was much used as a highway by the people of that section. For a considerable part of the way from the Wythe county line to Wilkinson's Forge, a distance of three and one-half miles, a high mountain lay along the northwest side of the road, there being practically no level ground between the river and the mountain, except that occupied by the public road. When the New River Plateau Railway Company projected its line through this mountain region, it naturally desired, for economy, to occupy the level ground along the bank of New river, and finding the narrow space at the point mentioned already occupied as a public highway, it applied to the county court of Carroll county, at its October term, 1889, for viewers to be appointed to report to the court upon the advisability of discontinuing the county road from the Wythe line to Wilkinson's Forge. In response to this application the court appointed viewers with instructions to report in writing whether, in their opinion, the road should be discontinued, and what inconvenience would result therefrom; and also to report

whether it would be advisable to discontinue the road provided
the applicant would make in its place another suitable and law-
ful road for the public to travel.   In compliance with this order,
the viewers performed their work and unanimously concluded
and reported that it would be inadvisable and improper to dis-
continue the road, because it was an important thoroughfare for
the traveling public between the counties of Wythe and Carroll,
and a very convenient passway generally.   These viewers further
reported that the railroad authorities, who were present, upon
being informed of the conclusion, asked that they report and
recommend to the court a temporary discontinuance of the
public road, upon the terms that the railroad company make
an entirely new and lawful county road between the points men-
tioned, along the mountain side above the railroad, so as to be
entirely out of its way, and where necessary to place proper
guards on the lower side so as to make it safe for the passage
of wagons or anything else that may pass along the road.   In
response to this request, the viewers reported the proposition to
be reasonable and recommended that it be granted by the court.

When this report was filed, the court, on the motion of the
Norfolk and Western Railroad Company, the party interested,
entered an order providing that the public highway should be
discontinued when the Norfolk and Western Railroad Company
had constructed the new road as proposed, in accordance with the
terms and specifications of the report of the viewers, and had pro-
cured the right of way for such new road and turned the same
over to the county.   And on further motion of the railroad com-
pany, leave was given it to close the highway till the 15th day of
February, 1890, so that the proposed work could be prosecuted at
once, and the viewers were directed to report at the February
term, 1890, whether the railroad company had constructed the
new road and made it as good as the road or highway along the
river.

On December 20, 1889, the viewers were directed to go over
the proposed location of the new county road and report thereon.

Those viewers suggested certain changes, and reported the route of the new road and filed a map showing its location, recommending that the road should not be less than seventy feet from the railroad, nor at a higher grade than five degrees. This report was ordered to be filed, and thereafter proper proceedings were taken by the railroad company to condemn or otherwise acquire the location for the road which it proposed to substitute for the old road.

In May, 1891, on motion of the Norfolk and Western Railroad Company, the court appointed five commissioners to meet and examine the new road made by the company in place of the old county road taken by the company, and report whether, in their opinion, the same should be received by the court. In June, 1891, this board of commissioners reported that they had carefully inspected and examined the road, and that the railroad company had only attempted to make a road; that it was no road at all, as contemplated by law; that it was not of necessary width, not smoothed of rocks and obstructions, well drained or otherwise in good legal order. They further reported that the road was on the mountain side where it was very steep and rocky; that in building the road it was necessary to prop it up or underpin it on the lower side to keep it on a level grade—the object being to prevent the road from sliding off and giving way on the lower side; that the timber used for the purpose was too small, unsafe and wholly insecure for the purpose and had given way, causing slides in the road; and that, in their opinion, at no distant day the whole road would slide into the railroad track below. In conclusion, the commissioners said that the road should not be received by the court and put upon the county to keep up. On the 15th day of June, 1891, this report was received by the court, approved and ordered to be filed, and the commissioners discharged.

On July 21, 1891, the Norfolk and Western Railroad Company again applied to the county court of Carroll county for the appointment of other commissioners to make a report on the new

road that had been built. This commission was appointed, and reported in favor of receiving the new road, saying that it was as good as could be built upon the location by a resonable expenditure of money. The county excepted to this report, and objected to the acceptance of the road; and thereupon the matter was continued until the September term.

No further action was taken on this report until January, 1892, when the following order was entered: "This day came the parties again by their attorneys, and by their consent and agreement it is ordered that the Lobdell Car Wheel Company and Carroll county withdraw their contest to the confirmation of the report made by Martin Hanks and others, and this matter is to be considered as if said report had never been filed. That the Norfolk and Western Railroad Company pay the cost, except that no attorney's fee is to be taxed in behalf of the contestants, and execution is stayed for sixty days."

This order shows that the report of Martin Hanks and others, recommending that the new county road be received, was not confirmed, but that the report was withdrawn and the matter allowed to stand upon the report of June, 1891, recommending that the road be not received, which report was approved and confirmed by the order of June 15, 1891.

It is suggested in argument, by counsel for appellant, that in the language "as if said report had never been filed," occurring in this order, the word "report" was inadvertently used, and that the word "exceptions" should be substituted in the place of "report."

The order suggests the idea that some adjustment of the contest over the report had been reached by the parties, but the record furnishes no warrant for the proposed change in the language of the order. If, however, the word "exceptions" was substituted for the word "report," the fact would remain that the court had not accepted or approved the new road as built by the railroad company. So far as the record shows it appears that the new road was never accepted by the court, nor by agreement of

parties. No further action in the matter appears to have been taken until the institution of this suit, and the Norfolk and Western Railway Company have in the meantime, and for sixteen years or more, been continuously running trains upon its road built upon the bed of the old county road.

The action of the circuit court in overruling the demurrer to the bill is assigned as error.

The first ground assigned in support of the demurrer is that the board of supervisors had no right to maintain this suit. This contention cannot be sustained.

"The supervisors of the several districts in each county shall constitute the board of supervisors for said county, and by the name of 'The Board of Supervisors of . . . . . . . . County' may sue and be sued in relation to all matters connected with their duties as such board, and have a seal and alter the same at pleasure." Va. Code, sec. 825.

"The board of supervisors of their respective counties shall have the control, supervision, management and jurisdiction over all of the county roads, causeways and bridges, landings and wharves erected or repaired within this State." Va. Code, 1904, sec. 944-a (1).

In this respect the supervisors are the successors of the county court, and the sections of the Code cited make their right to maintain this suit clear.

The only remaining ground relied on in support of the demurrer to the bill is that long acquiescence had barred the right of the board of supervisors to a specific performance of the alleged contract to build the new road, or the right to have abated as a nuisance the defendant company's occupancy of the old county road.

Section 1094 of the Code of 1887, which was in force at the time the defendant company took possession of the public highway in question, provides that, under certain circumstances and subject to certain conditions, a railroad may cross or alter a public road, but that such county road may be altered by any such

railroad company only whenever it shall have made an equally convenient road in lieu thereof. This is a positive statutory requirement, that when the defendant undertook to change this public road, in order that it might occupy the old road for its own uses, it should provide an equally convenient road in lieu thereof.

The proceedings in the county court did not take the matter from under the operation of this statute. When the railroad company made its proposition to build an equally convenient road, if permitted by the court to occupy the old road, it did no more than the law required it to do before it could take for its purposes the public road. And when the court, in its order accepting the proposition, set forth the plans and specifications to be observed in building the new road, it was merely prescribing what would be regarded by it as a compliance with the statutory requirement to build an equally convenient road.

A promise to perform a legal duty does not make it any the less a duty, nor does it transform the legal duty into a mere personal obligation.

In the case of *City of Oshkosh* v. *Railway Company,* 74 Wis. 534, 43 N. W. 489, 17 Am. St. Rep. 175, citing with approval *Jamestown* v. *Railway Co.,* 69 Wis. 648, 34 N. W. 728, it is said: "In that case this court sustained a bill brought by the town to compel the railroad company to restore a public highway, which it had practically destroyed in constructing its road, to its former condition of usefulness to public travel. The jurisdiction of the court was rested upon the ground that a court of equity would compel a railroad corporation to perform the plain statutory duty of restoring the highway which it had invaded to its former state of usefulness, as a condition to using it for the purposes of its roadbed. This duty is imposed by statute by plain and positive language, and a railroad corporation has no warrant in law to invade a highway with its track without complying with the law which grants the privilege to do so. It is contumacious and wrongful conduct for the officers

of a railroad corporation to occupy a public highway with its track, practically destroying the street for purposes of public travel, and then defy or disregard all law and all authority invoked to compel them to repair the wrong which they have done the public. The courts would be impotent indeed if they could not correct such flagrant invasions of public right."

So that, in the case at bar, the defendant company was under the most positive statutory obligation as well as contractual undertaking to provide a suitable and convenient highway for public travel in the place of the public highway appropriated by it. The last order had in the county court in this matter was dated January, 1892. Formal notice was served in November, 1906, demanding that the defendant company abate the nuisance by removing its railroad out of the public highway, or that it make a suitable public highway in lieu thereof. There are many reasons which might be suggested for this delayed action on the part of the county authorities, such as the railroad company being in the hands of a receiver for some time, etc.; but this is not necessary, for the reason that the public highways belong to the State, and the complainants represent the sovereign State, against whose rights the statute of limitations does not run, nor the doctrine of *laches* apply. As against the government, *laches* cannot be set up as a defense in equity any more than the bar of the statute can at law. *U. S. v. Dallas Military Road Co.,* 140 U. S. 559, 35 L. Ed. 560, 11 Sup. Ct. 988.

In the case of *Bunting* v. *Danville,* 93 Va. 200, 24 S. E. 830, it is held, in speaking of the dedication of a public highway, that when dedication has become complete and irrevocable, no obstruction of the subject of the dedication, and no encroachment upon it for any length of time, will affect the dedication, or impair the rights of the public to it, unless the land so dedicated has been abandoned by the public, or by the proper authority. "Time does not run against the State, nor bar the right of the public."

In the case at bar, there has been no abandonment of the right of the public in the highway taken by the defendant company. On the contrary, the county of Carroll has in the most positive terms refused to accept or approve of the road offered by the defendant as a substitute for the highway, and compliance with the requirement of the legislature that an equally convenient road be provided in lieu of the old road was a condition precedent to the occupation of the highway by the railroad.

In *Taylor* v. *Commonwealth,* 29 Gratt. 780, Judge Moncure, speaking for his court, says: "A valid dedication of a street to the public use, perfected by acceptance, makes it a highway, an unlawful obstruction of which is not legalized by lapse of time. *Nullum tempus occurrit regi* applies in this State to the Commonwealth as it does in England to the King."

In the case of *Norfolk City* v. *Chamberlaine,* 29 Gratt. 534, it is said: "To the Commonwealth here, as to the King in England, belongs the franchise of every highway as a trustee for the public; and streets regulated and repaired by the authority of a municipal corporation are as much highways as rivers, railroads, canals or public roads laid out by authority of the State."

As said by Chief Justice Gibson in *O'Connor* v. *Pittsburg,* 18 Pa. St. 187, the legislature of the State alone represents the public at large, and it alone has full and paramount authority over all public highways.

In the light of what has been said, and of the authorities cited, there was no error in overruling the demurrer to the bill on the ground of *laches.*

The question of *laches* has been dealt with thus fully because it is also made the subject of the second assignment of error, which now calls for no further consideration.

The third assignment of error involves the contention that the county authorities had accepted the new road as a performance by the Norfolk and Western Railroad Company of its duty and obligation in the premises.

It has been shown that there was never any acceptance by

the county court of this new road. The record shows that the public used the new road, and that the county authorities, from time to time, worked and repaired it; but this cannot be construed as an acceptance of the road in the face of the unequivocal refusal of record by the county court to approve and accept the road as a proper discharge by the railroad company of its obligations. The highway of which the public was deprived was an important thoroughfare; it being the only outlet many people had through that mountainous section of the State. The railroad company was permitted to occupy the level and natural highway along the bank of New river in advance, upon the faith of its statutory and contractual obligation to build another suitable road, equally as convenient as the old road. When the railroad was built upon the public road the only outlet left was the new road, and the people had no other alternative than its use, and the public road authorities in that district did what they could to enable the people to pass over it. This enforced use of the new road, for which the railroad company is responsible, cannot be now invoked as an evidence of its acceptance.

The fourth assignment of error is to the action of the circuit court in holding the defendant, Norfolk and Western Railway Company, responsible for the obligations in this matter of the Norfolk and Western Railroad Company; it being contended that the last-named company had been sold under foreclosure proceedings and bought by the defendant company, which was not responsible for the obligations of the Norfolk and Western Railroad Company now sought to be enforced.

The statute in force at the time the defendant company purchased the property of the Norfolk and Western Railroad Company provides that: "The corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights and privileges, and perform all such duties, as would have been had, or should have been performed, by the first company, but for such sale and conveyance; save only that

the corporation so created shall not be entitled to the debts due to the first company, and shall not be liable for any debts of or claims against the said first company which may not be expressly assumed in a contract of purchase; and the whole profits of the business done by such corporation shall belong to the said purchaser and his assigns." Code, 1887, sec. 1234.

Section 1 of the charter of the defendant company provides that "such new corporation shall have, possess and be invested with all the estate, right, title and interest in and to such railroads and other property, with their appurtenances, and all franchises, powers, rights and privileges had and possessed by said Norfolk and Western Railroad Company to the same extent as a purchaser under sections twelve hundred and thirty-three and twelve hundred and thirty-four of the Code of Virginia, and shall perform all the duties prescribed by said sections of said Code." Acts 1895-96, p. 64.

In view of the obligations assumed by the defendant company under this statute and its charter, the question to be determined is whether the obligation resting upon the first company to make a new public road to take the place of the old road, which the first company had taken possession of and which the new company also took possession of and now occupies, was a duty which the second company can be required to perform.

What the duty is that the purchaser in such a case has to perform is very clearly stated in the case of *Sherwood* v. *Atlantic & Danville R. Co.,* 94 Va. 291, 26 S. E. 943. In delivering the opinion of the court in that case Judge Keith says: "It is true that the present Atlantic and Danville Railroad Company is a corporation created by and in consequence of such a sale and conveyance as is referred to in the section just quoted (1234), and that it has succeeded to all the franchises, rights and privileges, and is bound to perform all such duties as would have devolved upon the first company but for such sale or conveyance, but it is obvious from the terms of the statute that it was not intended to impose upon the new company any additional

or higher duty than already rested upon the original company. It is bound to perform 'all such duties' as could have been required of the first company, but only such duties as could have been required of the original company. If a duty rested upon the original company to maintain and operate the line from Shoulder's Hill to a point within the City of Portsmouth of such a character as a court would enforce by *mandamus,* then the new company is equally bound to perform it, and is equally liable to be compelled to do so by *mandamus* or any other appropriate remedy."

In the case at bar the duty of building the new public road unquestionably rested upon the Norfolk and Western Railroad Company, and, not having performed that duty, the responsibility passed to its successor, the defendant company, which is bound to perform *"all such duties as could have been required of the first company."*

The fifth and last objection is that the decree appealed from directs the defendant company to complete and build a road equally as suitable and convenient as the old road, and to place proper safeguards on the lower side for the protection of the traveling public.

This objection is broad enough to involve a review of all the assignments preceding it. This is, however, unnecessary. It is sufficient to say in conclusion, that the evidence abundantly shows that the Norfolk and Western Railroad Company and its successor in title, the defendant company, have attempted to impose upon the public an inadequate, inconvenient and unsuitable road as a substitute for a good highway along the banks of the river, which has been appropriated by these companies for railroad purposes.

The specifications which the railroad company agreed should govern in building the road were that it should be located according to the map of an engineer filed in the papers; that the grade should not exceed five degrees; that where necessary proper safeguards should be placed on the lower side of the road

for the protection of the traveling public; that the new road should be equally as good and convenient as the old road running down the river; and that it should be a lawful and suitable road. These terms, agreed to by the railroad company and approved by the order of the county court, are but the measure of duty determined upon as necessary to meet the demands of the statute in the situation brought about by the contemplated change of the public road at the instance and in the interest of the railroad company. The record demonstrates the fact that the railroad company has failed to perform its statutory and contractual obligations with respect to this matter. It has occupied the old road, which was built on the most suitable location to be found in that mountainous section, and substituted therefor an inadequate and dangerous way along precipitous cliffs, which in the beginning, as early as 1891, was reported to be almost impassable. Instead of blasting out the rock so as to secure the necessary width, the road was built on wooden "cribbing," which in a short time rotted and allowed the road to slide down the side of the mountain, thus making it in many places so narrow that vehicles cannot pass without great danger of falling over precipices. There are scarcely any places on the road where vehicles can meet and pass each other.

It is not necessary to point out other serious defects proven by the evidence in the construction of this road. It is enough to say that the railroad company has not performed either the letter or the spirit of its undertaking. As said by the learned judge of the circuit court, "the railroad company has perhaps saved itself many hundreds of thousands of dollars by the construction of its roadbed upon the old county road, and it should at least have provided the county with a suitable road to take the place of the one it occupied." The railroad company having taken the old road and undertaken to build another equally as good and according to certain specifications, cannot be now heard to say that it is inequitable to compel it to perform that under-

taking. Equity and good conscience require that the defendant railroad company be made to perform this long delayed obligation and duty which it owes to the public.

There is no error in the decree complained of, and it is affirmed.

*Affirmed.*

Cardwell, J., dissents.