## Richmond.

## HOSTER'S COMMITTEE V. ZOLLMAN AND OTHERS.

### November 15, 1917.

1. SPECIFIC PERFORMANCE—*Discretion of Court.*—Specific performance of contracts to convey real estate is not a matter of right, but of sound judicial discretion—not, indeed an arbitrary or capricious discretion, dependent upon the mere pleasure of the court, but of sound and reasonable discretion, governed by well established general rules and principles. When these general rules and principles do not furnish the solution of any particular case, then its determination must depend upon the peculiar circumstances of that case.

2. SPECIFIC PERFORMANCE—*Requisites of the Contract—Mutuality of Obligation and Remedy—Consideration of Contract.*—To justify the court in decreeing specific performance of a contract, the contract must be based upon either a valuable or a meritorious consideration, and its terms must be definite. There must be mutuality in both the obligation and the remedy, and the person seeking the relief must show himself to have been ready, desirous, prompt and eager in the assertion of his rights.

3. SPECIFIC PERFORMANCE—*Laches.*—In a suit for specific performance the laches of the complainant will bar the relief. Thus, where more than thirteen years elapsed after the date of the contract sought to be specifically enforced, and there was no suggestion in the record as to the reasons for the delay in seeking its specific performance, such delay is a conclusive bar to relief. The parties to the contract must be construed to have mutually abandoned all right or claim thereunder.

4. SPECIFIC PERFORMANCE—*Definiteness of Contract—Parol Evidence.*—Where in a suit for specific performance of a contract for the sale of land, the whole transaction, as it appeared from the bill and the contract, was involved in so much doubt and obscurity that it was impossible therefrom to ascertain just what the parties agreed to, specific performance of the contract will not be decreed. While parol evidence may be introduced to supply deficiencies in the description of the land, or to explain ambiguities in the agreement, such evidence cannot be introduced to supply the lack of an agreement, or by construction to alter or vary it and create a different agreement from

> that to which the parties have assented. In the case at bar
> the vendee was insane and two of the vendors were dead. The
> danger of any attempt to remove the obscurities apparent upon
> the face of the document by the parol evidence of strangers to
> the contract was, therefore, obvious.

Appeal from a decree of the Circuit Court of Rockbridge
county. Decree for defendants. Plaintiff appeals.

*Affirmed.*

The opinion states the case.

*Wallace Ruff* and *C. S. W. Barnes,* for the appellant.

*Curry & Curry, H. S. Rucker, Hugh C. Davis* and *Wm.
A. Anderson,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

C. S. W. Barnes, committee of W. A. Hoster (a person
of unsound mind), filed his bill against the appellees for
the specific enforcement of a contract to convey certain
real estate.

The contract is in these words and figures:

"This contract made May 2, 1890, between Lorenzo S.
Bryan, Josie A. Zollman and Virginia Lee Bryan, parties
of the first part, and W. A. Hoster, party of the second
part.

"Whereas the parties of the first part are the sole heirs
at law of the late Mathew Bryan, who died intestate in the
year 1854; and whereas the said Mathew Bryan in his
lifetime by deed bearing date August 21st, 1851, recorded
in Deed Book BB, page 398, of the clerk's office of Rock-
bridge county, Virginia, conveyed to James C. Brownlee
and others one tract of land containing 500 acres, more or
less, reserving, however, to the said grantor, Mathew
Bryan, all mines and quarries of every description, and all

water privileges whatsoever, and also the right of way through and over every part thereof and timber thereon.

"Another tract of land being and lying on Irish Creek, known as the Ambrose Campbell tract, containing 1,200 acres, more or less.

"And one containing 205 acres, more or less.

"Reserving to the said grantor, Mathew Bryan, all mines, minerals and quarries of every description to himself, and also right of way through and over every part thereof, and a part of the timber thereon.

"Another tract of iron ore lying in Augusta county known as the 'Mine Bank.'

"Also the iron ore land of Cotopaxi mines and surrounding lands of the said Mathew Bryan.

"Now, therefore, we the said parties of the first part do bargain and sell to the said party of the second part, all lands, minerals and timber of the estate of the said Mathew Bryan, wherever it may be found, and the purchase price thereof is not to exceed fifty thousand dollars.

"And the said parties of the first part bind themselves to pay all court expenses, and further agree to have all their property surveyed, and also to cause to be made a complete and perfect copy of abstract of title to the same, with maps or plats accompanying the same, and a copy of said survey, abstract of title and plats of said property shall be delivered to the said party of the second part, W. A. Hoster. and if found to be satisfactory, then the said party of the second part agrees to pay unto the said parties of the first part all the purchase money herein stipulated and contracted. In witness whereof we have hereunto set our hands and affixed our seals the day and year above written.

|  |  |
|---|---|
| "L. S. BRYAN, | (Seal) |
| "JOSIE A. ZOLLMAN, | (Seal) |
| "VIRGINIA LEE BRYAN | (Seal) |
| "W. A. HOSTER. | (Seal)" |

On the same date the same Lorenzo S. Bryan, Josie A. Zollman and Virginia Lee Bryan conveyed the 500-acre tract of land upon Painter's mountain, in Rockbridge county, referred to in the contract, to the same W. A. Hoster, upon the condition that he (Hoster) was to remove all clouds from the title to the property, and that when the clouds upon the title had been removed he would pay to the grantors $30,000, one-half in cash and the balance in one and two years, the interest to commence when the clouds should be removed, and reserved a vendor's lien upon the property for such purchase money.

Although this deed and contract were executed May 2, 1898, this suit was not instituted until the 23rd day of August, 1915. The bill alleges that Hoster was adjudged to be a person of unsound mind in proper proceedings in the State of West Virginia, on the 30th day of January, 1912, and that his estate in Virginia was committed to Barnes on the 23rd day of August, 1915. Lorenzo S. Bryan died in August, 1910, and Josie A. Zollman also died after the contract was executed and before this suit was instituted, but the date of her death is not stated, and Virginia Lee Bryan has intermarried with one White. There is no explanation in the bill of the delay in instituting this suit for specific performance against the heirs at law of these decedents, Mrs. White and the adverse claimants of the property.

It is apparent from the statement of these facts that the decree of the court sustaining the demurrer of the defendants to the bill is plainly right.

Specific performance of contracts to convey real estate is not a matter of right. but of sound judicial discretion—not, indeed. an arbitrary or capricious discretion. dependent upon the mere pleasure of the court. but of sound and reasonable discretion, governed by well established general rules and principles. When these general rules and

principles do not furnish the solution of any particular case, then its determination must depend upon the peculiar circumstances of that case. The contract must be based upon either a valuable or a meritorious consideration, and its terms must be definite. There must be mutuality in both the obligation and the remedy, and the person seeking the relief must show himself to have been ready, desirous, prompt and eager in the assertion of his rights. It is unnecessary to cite authorities for these doctrines, as they are everywhere accepted. A valuable note, collecting the Virginia and West Virginia cases, may be found in 3 Gratt. (Va. Rep. Anno.), at p. 628. See 12 Ency. Dig. Va. & W. Va. Rep. 569; 16 Ency. Dig. Va. & W. Va. Rep. 1136.

The laches of the complainant will bar the relief. *Richardson* v. *Baker*, 5 Call (9 Va.) 514; *Kelly* v. *Jones*, 6 Call (10 Va.) 205; *Ford* v. *Euker*, 86 Va. 79, 9 S. E. 500; *Clay* v. *Deskins*, 36 W. Va. 355, 15 S. E. 87; *Peers* v. *Barnett*, 12 Gratt. (Va. Rep. Anno.) 634, note.

From the date of this contract to the date when Hoster was adjudged insane in West Virginia, there elapsed more than thirteen years, and there is no suggestion in the record as to the reasons for the delay in seeking its specific performance, and under the circumstances of this case such delay is a conclusive bar to any relief. The parties thereto must be construed to have mutually abandoned all right or claim thereunder. *Hogg* v. *Shield*, 114 Va. 403, 76 S. E. 934; *Brashier* v. *Gratz*, 6 Wheat. 528, L. Ed. 323.

Even if Hoster had sought such specific performance promptly, it may well be doubted whether any relief could have been granted him, because of the indefiniteness of the contract and the lack of mutuality of remedy. Both the deed and contract were executed on the same day, and the one last executed may have been substituted for the one first executed; or possibly both must be construed together

as parts of one and the same transaction. If the contract was not abrogated by the deed then it is not clear whether that contract evidences a sale or a mere option to Hoster to purchase, because it requires the vendors to pay all court expenses and have the property surveyed, and to deliver to Hoster the abstracts of title with maps or plats to accompany same, and provides that, if found to be satisfactory, then he (Hoster) agrees to pay to the vendors all of the purchase money thereby stipulated or contracted for. The owners may have intended by this to leave it to Hoster's discretion, after having received the abstracts of title and plats, to determine whether he would take the property or not, upon condition, however, that if he should exercise his option and take it he should pay all of the purchase money stipulated and contracted for, which by the express language of the contract "is not to exceed fifty thousand dollars." On the very same day, however, one of the tracts of land was conveyed to Hoster, upon condition that he was to remove all clouds upon the title to that particular property, and to pay the grantors $30,000 therefor. The bill makes no allegation or claim that these clouds have ever been removed, or that this $30,000 has ever been paid by Hoster, but seeks credit therefor, and prays that the other $20,000 of the $50,000 purchase money shall be apportioned by the court between the other parcels of land referred to. The whole transaction, as it appears from the bill and the contract, is involved in so much doubt and obscurity that it is now impossible therefrom to ascertain just what the parties agreed to, and while parol evidence may be introduced to supply deficiencies in the description of the land, or to explain ambiguities in the agreement, such evidence cannot be introduced to supply the lack of an agreement, or by construction to alter or vary it and create a different agreement from that to which the parties have assented. *Grayson L.*

Co. v. *Young*, 118 Va. 122, 86 S. E. 826; *Edichal Bullion Co.* v. *Columbia Gold Mining Co.,* 87 Va. 641, 13 S. E. 100; *Darling.* v. *Cummings' Ex'r*, 92 Va. 521, 23 S. E. 880; *Berry* v. *Wortham*, 96 Va. 87, 30 S. E. 443.

Now that the vendee is insane and two of the vendors are dead, the danger of any attempt to remove the obscurities apparent upon the face of the document by the parol evidence of strangers to the contract is obvious, and it is certain that the laches of the complainant constitutes a complete bar to any relief in this cause.

*Affirmed.*