Present: All the Justices

CITY OF MANASSAS

v. Record No. 941189      OPINION BY JUSTICE LEROY R. HASSELL
                                    June 9, 1995
BOARD OF COUNTY SUPERVISORS OF
PRINCE WILLIAM COUNTY

BOARD OF COUNTY SUPERVISORS
OF PRINCE WILLIAM COUNTY

v. Record No. 941206

CITY OF MANASSAS

          FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                  Thomas S. Kenny, Judge Designate


     In these appeals, we consider issues relating to a decree
requiring the City of Manassas to make efforts to cede
jurisdiction of a portion of the City to Prince William County.

                                 I.

     The Town of Manassas, formerly a part of Prince William
County, became a city of the second class independent of the
County in 1975. The newly created City and the County executed
an Agreement, described as an inter-jurisdictional agreement, to
facilitate the transition of the Town's status to a city. The
Agreement sought to resolve numerous governmental issues relating
to: public schools; water; library and police services; and
jurisdiction.

     The City filed this action at law, seeking a declaration
that an area of land and improvements thereon, referred to as the
Courthouse Complex, is within the City limits and subject to its
jurisdiction. The County filed a counterclaim, asserting that
jurisdiction had been "equitably converted" to it and,
alternatively, sought an award of monetary damages based upon the
City's failure to cede jurisdiction to the County pursuant to the

terms of the Agreement.  The City demurred to the counterclaim and filed a special plea in bar, contending that the County's counterclaim was barred by the applicable statute of limitations.  The trial court sustained the demurrer and plea, holding that the County's claim for damages was barred by the five-year statute of limitations for written contracts.  The trial court also transferred the case to the equity side of the court.

Subsequently, the County filed an amended counterclaim, seeking a declaration that the Courthouse Complex was under the County's jurisdiction because such jurisdiction had been "equitably converted" to the County or, in the alternative, seeking specific performance of the Agreement.  The City filed a demurrer and special plea asserting, inter alia, that the County's claims are barred by the statute of limitations and laches.

At a trial on the merits, the chancellor held, inter alia, that:  the City retained jurisdiction over the Courthouse Complex; the County's counterclaim is not barred by the statute of limitations or laches; and the City is required to institute proceedings to cede jurisdiction of the Courthouse Complex to the County as required by the Agreement.  Both the County and the City appeal.

## II.

The chancellor made numerous findings of fact, relevant to these appeals, that are not challenged by the litigants.  The Courthouse Complex, situated upon 38.4 acres of land, is owned by the County, and the City has a 20% ownership interest in the Courthouse Complex.  For many years before the incorporation of

the City in 1975, the County's courts, jail facilities, police facilities, and other administrative offices were located in the Courthouse Complex.  Presently, many of these facilities, including the County courts, remain located in the Courthouse Complex.

During the negotiations relating to the Town's transition to city status, the City wanted the County to retain its courthouse within the Courthouse Complex because the courthouse provides substantial economic and symbolic benefits to the City.  The City made certain inquiries and learned that Fairfax City had created a geographical configuration described as a "doughnut hole" within its boundaries, in which Fairfax County had jurisdiction. Fairfax City instituted certain proceedings in 1967 by adopting an ordinance pursuant to Code § 15.1-1059, which was subsequently approved by the Fairfax Circuit Court and the General Assembly. When it executed the Agreement, the City of Manassas anticipated that it would institute legal proceedings to cede jurisdiction over the Courthouse Complex to Prince William County in a manner similarly utilized by Fairfax City and Fairfax County.

The Agreement includes the following paragraph, which is germane to these appeals:

D.  COURTHOUSE COMPLEX

City agrees to institute proceedings necessary to exclude from its corporate boundaries and from the jurisdiction of the City the contiguous property constituting the courthouse complex as per the attached map, provided that such property shall again become incorporated within the City corporate limits in the event that the Prince William County Courthouse is relocated, and Council and Supervisors agree that any court order or legislation entered in furtherance hereof shall contain a reversionary clause to such effect.

In 1976, an assistant city attorney sent a letter to the acting county attorney, requesting that the County provide a legal description of the Courthouse Complex. The assistant city attorney also raised concerns about the constitutional validity of certain statutes that authorized the Fairfax jurisdictional arrangement. The County failed to respond to this letter.

The City admitted, and the chancellor found, that the City did not repeat its request for information, nor did it seek legislation or institute court proceedings to transfer jurisdiction of the Courthouse Complex to the County. However, the County did not complain about these matters until a dispute arose in 1990, when the County sought to expand its jail and Judicial Center, located in the Courthouse Complex.

### III. THE CITY'S APPEAL

#### A.

The chancellor held that the County's counterclaim is exempt from the statute of limitations and laches. The City asserts that the County is merely seeking to vindicate a private contractual right and, thus, the County, like any private litigant, is bound by laches and the statute of limitations. The County, relying upon City of Portsmouth v. City of Chesapeake, 232 Va. 158, 349 S.E.2d 351 (1986), argues the chancellor correctly held that laches and the statute of limitations are not defenses that may be asserted against a municipality acting in a governmental capacity. We agree with the County.

In City of Portsmouth v. City of Chesapeake, we considered whether the City of Portsmouth's petition to ascertain and establish the boundary line between Portsmouth and the City of

Chesapeake was barred by the doctrine of laches. Portsmouth had filed an action against Chesapeake in 1982, seeking to establish and ascertain certain boundary lines that were created in annexation proceedings brought by Portsmouth against the County of Norfolk, now Chesapeake, in the 1950s. According to Chesapeake, the suit papers in the annexation proceedings had disappeared, and Chesapeake did not have the benefit of a plat depicting the boundaries of the area awarded.

Portsmouth had filed identical petitions to establish boundaries in the Circuit Courts of Portsmouth and Chesapeake, and the Circuit Court of Chesapeake granted Chesapeake's motion to dismiss on the ground that Portsmouth's petition was barred by the doctrine of laches. Reversing that judgment, we held:

> [L]aches or estoppel is not available as a defense
> against a municipality acting in its governmental
> capacity. See Segaloff v. City of Newport News, 209
> Va. 259, 261, 163 S.E.2d 135, 137 (1968); Supervisors
> v. N. & W.R. Co., 119 Va. 763, 790, 91 S.E. 124, 133
> (1916); Norfolk & W.R. Co. v. Supervisors, 110 Va. 95,
> 103, 65 S.E. 531, 534 (1909). Protecting municipal
> boundary lines is governmental activity.

Id. at 164-65, 349 S.E.2d at 354.

Recently, we restated our longstanding rule, albeit a minority view, that certain equitable defenses, such as laches, do not apply to state or local governments when acting in a governmental capacity. Dick Kelly Enterprises v. City of Norfolk, 243 Va. 373, 381, 416 S.E.2d 680, 685 (1992); accord Board of Supervisors v. Booher, 232 Va. 478, 481, 352 S.E.2d 319, 321 (1987) (laches does not apply "to a local government in the discharge of its governmental functions."). Likewise, we have held that neither laches nor the statute of limitations may be asserted as a defense in an equitable proceeding to bar the state

from asserting a claim on behalf of the public. Supervisors v. N. & W.R. Co., 119 Va. 763, 790, 91 S.E. 124, 133 (1916); Norfolk & W.R. Co. v. Supervisors, 110 Va. 95, 103, 65 S.E. 531, 534 (1909).

Applying this established precedent, we hold that the chancellor correctly ruled that the County's counterclaim was not barred by either the statute of limitations or laches. Here, as in City of Portsmouth v. City of Chesapeake, the County's claim is asserted in furtherance of a governmental activity. The County is seeking to acquire jurisdiction, including the right to exercise its police and zoning powers, over the Courthouse Complex. We also observe that the County's reasons for pursuing this litigation, expansion of its jail and Judicial Center, are also in furtherance of governmental activities.

B.

The City argues that the chancellor erred by awarding specific performance of the Agreement. First, the City argues that the County has an adequate remedy at law, and, thus, specific performance is not appropriate. The County asserts, and we agree, that it has no adequate remedy at law.

It is true, as the City asserts, that we have recognized that a litigant who seeks specific performance must demonstrate the lack of an adequate remedy at law. See Chattin v. Chattin, 245 Va. 302, 307-08, 427 S.E.2d 347, 350 (1993). And, we do not depart from this elementary principle.

Contrary to the City's contention, however, the County lacks an adequate remedy at law to enforce the provisions of Paragraph (D) of the Agreement. As the chancellor found, the County

desires jurisdiction over the Courthouse Complex so that it can expand the jail and Judicial Center and exercise zoning and other police powers over the Courthouse Complex. Even though the County initially sought monetary damages when it filed its counterclaim, which was dismissed by the chancellor, a judgment at law is not an adequate legal remedy for the right that the County seeks to vindicate.

C.

Next, the City argues that the chancellor erred by ordering specific performance because the City says that Paragraph (D) of the Agreement "lack[ed] certainty and definiteness." Specifically, the City says that there "is no provision in Paragraph D, apart from the ambiguous reference to institute proceedings, as to what the parties intended to be done." We disagree with the City.

> We have held that:
>> The granting of specific performance is addressed to the sound discretion of the trial court. Although it is not a matter of absolute right, "where the contract sought to be enforced is proved and is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree specific performance as it is for a court of law to give damages for a breach of it."

Haythe v. May, 223 Va. 359, 361, 288 S.E.2d 487, 488 (1982) (quoting Pavlock v. Gallop, 207 Va. 989, 995, 154 S.E.2d 153, 157 (1967)). We have also stated:

>> When the contract sought to be enforced . . . has been proven by competent and satisfactory evidence, and there is nothing to indicate that its enforcement would be inequitable to a defendant, but will work injury and damage to the other party if it should be refused, in the absence of fraud, misapprehension, or mistake, relief will be granted by specific enforcement.

First Nat. Bank v. Roanoke Oil Co., 169 Va. 99, 117, 192 S.E.

764, 771 (1937).

Additionally, the terms of the contract sought to be specifically enforced must be definite. Hoster's Comm. v. Zollman, 122 Va. 41, 45, 94 S.E. 164, 165 (1917); Van Dyke v. Norfolk & S.R. Co., 112 Va. 835, 849, 72 S.E. 659, 664 (1911). Finally, we also observe an equally important pertinent principle:

> The law does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency. While courts cannot make contracts for the parties, neither will they permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in the light of all the surrounding circumstances. This is especially true where there has been partial performance.

High Knob, Inc. v. Allen, 205 Va. 503, 507, 138 S.E.2d 49, 53 (1964).

Applying these principles, we hold that Paragraph (D) of the Agreement is sufficiently definite to permit specific performance. According to the plain language in that paragraph, the City agreed to institute necessary proceedings or seek appropriate legislation that would authorize the City to cede jurisdiction of the Courthouse Complex to the County.

We also observe that the chancellor permitted the litigants to introduce evidence at trial regarding the City's intent when it agreed to the 1976 Agreement. Many witnesses, including Harry J. Parrish, who was the City's mayor when the Agreement was executed, acknowledged that the City intended to convey jurisdiction of the Courthouse Complex to the County. Numerous other witnesses testified that the City and County intended to utilize the same method that Fairfax City and Fairfax County had

used to create a similar geographical configuration.

Several members of the County's Board of Supervisors testified that the City agreed to take whatever steps were necessary to convey jurisdiction of the Courthouse Complex to the County.  Finally, the chancellor found that the County had performed all its obligations under the Agreement, but that the City, which has reaped economic and symbolic benefits attributable to the location of the Courthouse Complex, has not performed its obligation to initiate proceedings to transfer jurisdiction to the County.

D.

The City argues that the chancellor's decree is inconclusive in nature and indefinite.  To buttress its argument, the City says that the decree directed it to "make a good faith effort to return the Complex to County control, whether it uses the Fairfax model or something else" and "[t]hus, the decree seemingly permits the City to elect the type of proceedings it must institute but at the same time puts the City at risk of making the wrong election because it must use a 'means (involving one or more steps) reasonably calculated to offer the best chance of success.'"   The County asserts, and we agree, that the chancellor did not err by decreeing that the City make a good faith effort to cede jurisdiction of the Courthouse Complex to the County.  We have said that

> [e]quity will decree that as done which by agreement is agreed to be done and is proper to fully effectuate the intentions of the parties concerned.

Pleasants v. Pleasants, 221 Va. 1017, 1021, 277 S.E.2d 170, 172 (1981).

The chancellor, in the proper exercise of his equitable jurisdiction, directed the City to comply with its agreement by making a good faith effort to cede jurisdiction over the Courthouse Complex to the County. Simply stated, the chancellor has merely required the City to perform the very task that the City agreed to perform. Contrary to the City's argument, the chancellor's decree is not indefinite, but a reasonable and practical solution that will prevent the City, which has received economic benefits from the County's full performance, from avoiding its contractual obligation.

E.

The City argues that it cannot lawfully cede the Courthouse Complex to the County, nor may the County lawfully accept jurisdiction over the Courthouse Complex. The City says that "[n]o statute in 1976 or now empowers the City to institute court proceedings to effectuate the transfer of jurisdiction and the reversion called for in Paragraph D of the 1976 Agreement. Hence, Paragraph D is void and unenforceable as a matter of law because of the absence of statutory authority for the City to carry it out."

We disagree with the City's contentions. The City fails to recognize its obligation under Paragraph (D). There, the City agreed to institute the appropriate legal proceedings and, if necessary, seek appropriate legislation so that the City could cede jurisdiction of the Courthouse Complex to the County. We simply fail to understand how the City can characterize as unlawful its contractual obligation to make good faith efforts to transfer jurisdiction to the County.

                                    F.

     The City argues that the chancellor "erred in failing to
consider the hardship which would result to the City if the
contract is specifically enforced."  The City contends that it
should have been permitted to introduce evidence to demonstrate
its purported hardship and inequity.

     The County filed a motion in limine to prohibit the City
from adducing evidence on the issue of laches.  The chancellor
advised the City that it may present evidence, which would
otherwise be inadmissible, to prove laches if that evidence was
admissible under some other theory or if the evidence related to
some other issue in the case.

     The City sought to admit evidence of hardship, but the
County's objection was sustained.  Subsequently, the City
proffered the testimony of its mayor, Robert L. Browne, that
related solely to the issue of laches.  Counsel for the City
described the parameters of the City's proffered testimony as
follows:

     The testimony of Mr. Robert Browne is being proffered
     for the record in accordance with the Rules of Court
     because the trial judge has ruled that the City is not
     entitled to present evidence of laches on the part of
     the County and, therefore, the City would not be
     entitled to submit evidence as to the prejudice to the
     City by virtue of the County's failure to insist on the
     City performing under Paragraph D of the 1976 Agreement
     or failure to bring an action to enforce Paragraph D.

     The City failed to proffer any evidence of any hardship or
inequity that might harm the City if the chancellor granted
specific performance.  And, as we have said, "this Court will not
consider an error assigned to the rejection of testimony unless
such testimony has been . . . made a part of the record in the

manner prescribed by the Rules of Court."  Brown v. Commonwealth, 246 Va. 460, 465, 437 S.E.2d 563, 565 (1993) (quoting Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977)); accord Blue Cross v. Commonwealth, 221 Va. 349, 357, 269 S.E.2d 827, 832 (1980).

## G.

As previously mentioned, Paragraph (D) provides, in part, "in the event that the Prince William County Courthouse is relocated, . . . Council and Supervisors agree that any court order or legislation entered in furtherance hereof shall contain a reversionary clause to such effect."  The chancellor found that "many of the more significant executive and legislative functions have been moved off the Complex" since the date the Agreement was signed.  The City argued at trial, and assigns as error, that "even if the County was entitled to jurisdiction of the Complex that this massive relocation of County buildings and functions triggered the reverter because the term 'Courthouse,' as used therein, was intended to refer to the entire Courthouse Complex." We disagree with the City.

The chancellor considered evidence and held that a reversion did not occur because the word "courthouse" as used in the Agreement means the location where the judges sit, and the Prince William County Courthouse has not been relocated.  Numerous witnesses testified, without dispute, that the courthouse remains in the Courthouse Complex.  Accordingly, we hold that the chancellor's findings are supported by credible evidence, and such findings may not be disturbed on appeal.

## H.

The City argues that "Paragraph D was entered into under mistake and misapprehension" and "a contract entered into under mistake and misapprehension will not be enforced."  The City, relying upon Haythe v. May, 223 Va. at 361, 288 S.E.2d at 488, argues that a court of equity will not award specific performance where there is evidence of fraud, misapprehension, or mistake.

We disagree.  The chancellor did not find, and the record is devoid of any evidence of fraud, misapprehension, or mistake.  Thus, we hold that the City's argument lacks merit.

IV.  THE COUNTY'S APPEAL

As we previously have stated, the chancellor held that the City has jurisdiction over the Courthouse Complex.  The County argues that "[p]rinciples of equity dictate that jurisdiction over the Courthouse Complex vested in the Board of County Supervisors after the County performed all of its obligations pursuant to the 1976 compact between the City and the County, which provided for transfer of jurisdiction of the Complex to the County, and when it became apparent that the City would not follow through with its obligation to convey such jurisdiction voluntarily."  The City argues that "[t]here are no equitable principles recognized in Virginia which authorize the court to divest jurisdiction of the Complex from the City and invest that jurisdiction in the County."  We agree with the City.

We discussed the doctrine of equitable conversion in Clay v. Landreth, 187 Va. 169, 172-73, 45 S.E.2d 875, 877 (1948):

> That the doctrine of equitable conversion exists in Virginia cannot be doubted.  In the early case of Dunsmore v. Lyle (1891), 87 Va. 391, at p. 392, 12 S.E. 610, the doctrine was stated thus:  "The principles upon which courts of equity decree specific performance of contracts for the sale of real estate are well understood and familiar to the profession, yet it will

be convenient, in the view we have taken of this case, to briefly recur to first principles; and we will remark that it is one of the principles of equity that it looks upon things agreed to be done as actually performed; and, consequently, as soon as a valid contract is made for the sale of an estate, equity considers the buyer as the owner of the land, and the seller as a trustee for him; and, on the other hand, it considers the seller as the owner of the money, and the buyer as a trustee for him."

Contrary to the County's assertions, the principles of equitable conversion simply have no application here.  We also reject the County's contention that the chancellor, under the exercise of his general equitable power, may grant jurisdiction of the Courthouse Complex to the County.  Accordingly, we hold that the chancellor did not err by refusing to apply the doctrine of equitable conversion here.      V.

In view of our holdings, we do not consider the remaining arguments of the City and County.  Accordingly, we will affirm the chancellor's decree, and we will remand these proceedings so that the chancellor may retain continuing jurisdiction.

Record No. 941189 -- <u>Affirmed and remanded</u>.
Record No. 941206 -- <u>Affirmed and remanded</u>.