# Richmond

## City of Newport News, A Municipal Corporation of Virginia v. Warwick County and York County, Virginia.

November 27, 1950.

Record No. 3698.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan and Miller, JJ.

The opinion states the case.

*Harry L. Nachman* and *Charles E. Ford*, for the plaintiff in error.

*Conway H. Shield* and *William E. Allaun, Jr.*, for the defendants in error.

GREGORY, J., delivered the opinion of the court.

On November 24, 1948, the County of Warwick filed a petition in the circuit court of that county in which it was alleged that a doubt exists as to the true boundary line between Warwick and York counties. It was also alleged that for the purposes of proper administration, jurisdiction,

and the exercise of its lawful governmental functions, the officers of the county had attempted to ascertain the boundary lines between the counties without success, and certain maps were referred to. It was further alleged that investigation failed to locate any official map of the counties of Warwick and York other than one prepared by actual survey by one John Wood in 1819. This map was consolidated with maps of other counties by Boyé, which was adopted by the General Assembly of Virginia as the official map in 1827. The petition proceeds: "No change in the boundary of Warwick county with York county appears to have been authorized by the Legislature since that date. The boundary lines as shown on said map are in direct conflict with the lines as they appear on the unofficial maps now used by the counties. If the true legal boundary line of the county of Warwick is as set forth in the John Wood map substantial parcels of land now lying in one or the other of the two counties would have to be redistributed in · order to conform with the true legal boundary lines."

The county alleges that "Your petitioner feels that in order to exercise its proper governmental functions the exact location of its boundaries with the county of York should be established."

The petition concludes with the prayer that in accordance with section 2685 of the Virginia Code of 1942, the Circuit Court of Warwick county appoint not less than three nor more than five commissioners, resident freeholders of Warwick county, to meet, ascertain and establish the true boundary lines between Warwick county and the county of York, and further that the court direct said commissioners to proceed to comply with the aforementioned section of the Code and report to the court as therein provided.

A similar proceeding was instituted in the county of York, but it will not be again referred to as it has been agreed that the parties will abide the final result of the appeal in this case from the Circuit Court of Warwick county in

respect to the proceedings in the Circuit Court of York county, identical orders having been entered in both counties.

On November 24, 1948, the court adjudicated that "doubt does exist as to the true boundary line between the county of Warwick and the county of York". Five commmissioners were appointed to proceed to ascertain and establish the true boundary line.

On May 19, 1949, upon the application of the City of Newport News, it was given thirty days to present a petition as *amicus curiae*, or party in interest, or in any other legal capacity. On June 18, 1949, the city filed a petition in which it sought to be made a party defendant to the proceeding and asked that the counties of Warwick and York be made parties to the petition in order that the city might be permitted to produce evidence that no doubt exists, and that there is no dispute valid in law as to the boundary lines, and for general relief.

On June 29, 1949, the commissioners filed their final report establishing the true boundary line between the counties of York and Warwick. They reported that they had met from time to time with the surveyor, and that "from the best available sources and old maps, * * * and from the best evidence they could procure, they ascertained and established the true boundary line between the counties of York and Warwick".

On June 29, 1949, the County of Warwick moved that the circuit court approve the commissioners' report and enter a final order approving the same, to which motion the city objected. The court ordered the report and plats to be filed, but granted the city the right to be heard upon its objection on July 27, 1949. The court heard the city upon its objection and its claimed right to intervene, and entered an order directing that the petition be rejected, giving its reasons therefor. Thereupon, the court approved the report of the commissioners, ordered that it and the map be filed, and fixed the true boundary line in accordance with

the report. This was done over the objection of the City of Newport News.

The record fails to indicate that the City of Newport News at any time presented or offered to present to the commissioners any evidence as to the true boundary line between the counties, though the city knew that the matter was pending before the commissioners.

On the 30th day of June, 1949, the Honorable Frank Armistead, Judge of the Circuit Court of Warwick county, entered an order disqualifying himself, and the Honorable Haskins Hobson was designated to sit in his place and decide the case.

The issue in the case is whether the City of Newport News was entitled to be made a party defendant and to intervene and present its evidence to the court or the commissioners concerning the true boundary line. The city, in its brief (p. 10), states that "It was the rejection of the city's petition refusing it the right to be heard as a party, which is the basis of its appeal—not whether the line established is right or wrong."

The proceeding for ascertaining and establishing the true boundary line between any two counties is expressly prescribed by section 2685 of the Code of 1942 (now sections 15-38 to 15-42, inclusive, of the Code of 1950). Section 2685, in so far as it is pertinent, reads as follows: "Whenever a doubt shall exist or dispute arise as to the true boundary line between any two counties in this state, it shall be lawful for the circuit courts of the respective counties, whose boundary is thus in doubt or dispute, each to appoint not less than three nor more than five commissioners, who shall be resident freeholders of their respective counties (a majority of those appointed for each county being necessary to act), who shall meet and proceed to ascertain and establish the true line. But the said commissioners, before proceeding to ascertain such boundary, shall employ a competent surveyor and chain-carriers to run the same, and shall, with the best evidence which they can pro-

cure, direct their surveyor where to run said line and shall have him mark the same. After said boundary line shall have been run and marked, said commissioners shall require said surveyor to make two plats of the courses and distances of the line, and to note thereon particularly such places of notoriety or objects of prominence through or by which it passes, as in the opinion of the commissioners will best designate the line. Said commissioners shall return said plats respectively to the respective courts by which they were appointed, together with their report of the performance of their duties in ascertaining and establishing said line, which report shall fully describe said line, and said courts, after inspecting such report and ascertaining whether the same meets the requirements of this section, shall, if such report meet said requirements and if it be unanimous, approve the same and direct it, together with the plat, be recorded in the deed books of their respective clerk's offices and indexed in the name of each county; and in all controversies thereafter touching the location of said line the said reports and plats shall be taken as conclusive evidence. * * *"

The latter part of the section is not relevant here.

An examination of the petition of the city which the court allowed to be filed and which it considered and rejected, discloses that the city objects to a part of its land in Warwick county being arbitrarily transferred to York county, resulting in the payment of different tax rates on the land so transferred. The city takes the position that no doubt exists nor is there any dispute as to the true boundary line between the two counties, and that the present boundary line has been accepted as the true one for more than one hundred years. The city also alleges that the proceeding, under Code, sec. 2685, has been irregular, and that the statute has not been complied with; that the proceeding was initiated for the purpose of arbitrarily giving away a part of the land belonging to the county of Warwick to York county, in order to reduce the square-mile area of Warwick county to such a point that it could be said to be

less than sixty square miles in area, and thus come within the purview of section 2968 of the Code of 1942 which prohibits the annexation of a portion of a county which contains less than sixty square miles; that as a taxpayer and as a municipality the city would be vitally and adversely affected in its constitutional right to proceed by annexation to acquire land in Warwick county, and it demands the right to be heard by the commissioners and by the court, and to produce evidence showing that the line established by the commissioners is not the true line; and also that there is no doubt or any dispute as to the boundary line. It says that the county of Warwick under the guise of ascertaining and establishing the true boundary line is but attempting to block the City of Newport News in its right to proceed by annexation in Warwick county, and that courts of equity, under principles of universal justice, have the right to prevent a wrong, to provide for the safety of the property in dispute, and to preserve property in danger of being transferred or changed, to the detriment of the petitioner. The city then alleges that it is interested in presenting evidence before this court to determine the true boundary line between the said counties.

The fact that doubt existed as to the true boundary line between the counties of Warwick and York is concluded by the order of the court entered on the 24th day of November, 1948, wherein the court adjudicated as follows: "Now, therefore, it appearing to the court that doubt does exist as to the true boundary line between the county of Warwick and the county of York, * * *."

■■ The General Assembly has the power to increase or diminish the territorial limits of a county (5 M. J., Counties, sec. 7), and by section 2685 of the Code of 1942, has fully set forth the procedure for settling disputed boundary lines. This was clearly within the legislative power. Under the procedure referred to no provision is made for parties defendant, such as the City of Newport News. The statute itself provides that when the line has been established there-

under, and the report of the commissioners, after an inspection, meets the requirements of the statute and is unanimous, as was the case here, the court shall approve the report and direct it, together with the plat, to be recorded, etc. It is further provided that in all controversies thereafter touching the location of the said line the report and plats shall be taken as conclusive evidence.

All the legislative requirements in the present case have been fully complied with. The City of Newport News did not offer any evidence before the commissioners as to the true boundary line, though it had an opportunity to do so. In delivering his opinion, the judge of the trial court, in part, said: "I think that this section of the Code was enacted not so much for the determination of private rights as for the determination of governmental rights, such as disputed or doubtful lines of adjacent counties. That would seem to be true particularly since the act does not require or contemplate the making of any property owners parties to any suit or action. * * * Therefore, the act not requiring the making of any private or property owners parties, its purpose is purely for the performance of governmental functions alone. * * * It (the act) does not prohibit but rather favors the production of evidence, however, by any person, whether he is a property owner within or adjacent to the boundary line, or any other party capable of producing evidence before the commissioners. * * * Being instituted to ascertain the true line for the performance of governmental functions it relates only to the governmental functions as between the two counties as to which county government shall exercise governmental functions· over the territory.

"It does not relate to private rights. So, therefore, I do not feel that the city of Newport News as a party owning property within their diverging lines, is necessarily a party to this proceeding. It can only be made a party by showing some rank injustice about to be done by its not so being made."

The opinion refers to the allegation in the petition of constructive fraud, but decides that the evidence was barren of any facts upon which fraud could be based, and holds that whether or not there was an actual dispute or doubt as to the line was settled by the order of Judge Armistead which has heretofore been referred to.

The court then decided that an ample opportunity had been afforded the City of Newport News to produce its evidence before the commissioners, but it failed to do so. It also decided that it was not the duty of the commissioners to consider what might have been the consequence of annexation proceedings instituted by the City of Newport News, but that their duties were limited to ascertaining the true boundary line.

The court also made this significant observation, " * * * so far as this proceeding is concerned, the city of Newport News, though aware of the appointment of commissioners, has not shown that it had any evidence to offer, nor did it attempt to offer any before the commissioners. Its counsel have undertaken to say that they hoped to investigate it further from various and sundry libraries and different institutions, and to present evidence. But they have not alleged that they have any evidence to offer that would alter or affect the report of the commissioners. They had the opportunity of offering that evidence if they did have it, and they did not do it." The petition of the City of Newport News was then rejected.

We concur in the opinion of the trial court. Under the statute the City of Newport News is not a proper or necessary party to the proceeding to establish the true boundary line between York and Warwick counties. The statute makes no provision for such a party. The establishment of the line as pointed out by the trial judge was primarily for the determination of governmental rights over the territory in dispute and not for the determination of private rights. Of course, the City of Newport News was entitled to appear before the boundary commissioners and present such evi-

dence as it had touching the true boundary line between the counties. This it failed to do. In any event, we do not think that its rights have been invaded by the present procedure. We therefore affirm the judgment of the trial court.

*Affirmed.*