CITY OF PORTSMOUTH

v.

CITY OF CHESAPEAKE

Record No. 831557

CITY OF PORTSMOUTH

v.

CITY OF CHESAPEAKE, ET AL.

Record No. 831741

October 10, 1986

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Gordon, Retired Justice

*Steven Lieberman, City Attorney (James T. Martin, Assistant City Attorney; George M. Willson, Assistant City Attorney,* on brief), for appellant. (Record No. 831557)

*Linda W. Groome, Assistant City Attorney (Ronald S. Hallman, City Attorney,* on brief for appellee. (Record No. 831557)

*Steven Lieberman, City Attorney (James T. Martin, Assistant City Attorney; George M. Willson, Assistant City Attorney,* on brief), for appellant. (Record No. 831741)

*Linda W. Groome, Assistant City Attorney (Ronald S. Hallman, City Attorney*, on brief), for appellee City of Chesapeake. (Record No. 831741)

*Robert L. Dewey (William E. Rachaels, Jr.; Willcox, Savage & Eley*, on brief), for appellee Aluminum Company of America. (Record No. 831741)

No briefs or arguments for appellees John B. McDaniels and McDaniels Roofing Corporation. (Record No. 831741)

CARRICO, C.J., delivered the opinion of the Court.

On September 14, 1982, the City of Portsmouth filed in Portsmouth Circuit Court a petition against the City of Chesapeake alleging that "[a] doubt exists and a dispute has arisen as to the true boundary line between the cities of Portsmouth and Chesapeake." The petition prayed for the appointment of commissioners pursuant to Code § 15.1-1026 to "ascertain and establish the true boundary line." On the same date, an identical petition was filed in the Circuit Court of the City of Chesapeake.

Chesapeake filed a motion to dismiss in each case. The Circuit Court of Portsmouth granted the motion on the ground that "the procedure invoked by [Portsmouth] as described in Virginia Code Section 15.1-1026 is inappropriate." The Circuit Court of Chesapeake granted the motion to dismiss on the ground that Portsmouth's petition was "barred by the Doctrine of Laches." We granted Portsmouth an appeal from each order of dismissal. On motion of the parties, we consolidated the cases for purposes of appeal.[1]

This controversy had its genesis in an annexation proceeding brought by Portsmouth against the County of Norfolk, now the City of Chesapeake, in the 1950s. The annexation court awarded Portsmouth 10.02 square miles of territory. According to Chesapeake's counsel, the suit papers in the annexation "disappeared

---

[1] Aluminum Company of America (Alcoa) and others, owners of land within the area in dispute, filed petitions to intervene in each of the proceedings below. Intervention was allowed in Chesapeake and denied in Portsmouth. Alcoa petitioned for an appeal from the denial in Portsmouth. We denied the petition. In its appeal in the Chesapeake case, Portsmouth assigns error to the allowance of intervention. We think the assignment is well-taken. A private property owner is not a proper or necessary party to a proceeding to establish a boundary line under Code §§ 15.1-1026 to -1031. *Newport News v. Warwick County*, 191 Va. 591, 599, 61 S.E.2d 871, 875 (1950).

from the Circuit Court file room years ago," and, unfortunately, we do not have the benefit of a plat depicting the boundaries of the area awarded.

The appendix, however, contains a photocopy of the annexation decree, which was entered August 20, 1959, effective at midnight December 31, 1959. The decree describes the property annexed. One of the calls in the description runs to "the northerly right of way line of the Virginian Railway Company's main line track [and] thence westerly along the northerly right of way of the main line of the Virginian Railway Company to a point distant two thousand six hundred and twenty three (2,623) feet northeasterly from the twelve (12) mile post of said railroad."

The land owned by the railway at this point consisted of a 55-acre parcel of varying width contained within irregular lines, extending, in one area, as much as 600 feet from the railroad track. Portsmouth claims to a line parallel with and immediately adjacent to the railroad track, which would place the 55-acre parcel within Portsmouth's boundaries, while Chesapeake claims to the irregular lines, which would locate the 55-acre parcel within Chesapeake's boundaries.

Code § 15.1-1026, pursuant to which Portsmouth filed its petitions, provides in pertinent part that "[w]henever a doubt shall exist or dispute arise as to the true boundary line between . . . any two cities . . . in this State, the circuit courts of the respective . . . cities . . . may each appoint not less than three nor more than five commissioners, . . . who shall meet and proceed to ascertain and establish the true line." Code § 15.1-1027 provides that "before proceeding to ascertain such boundary," the commissioners shall "employ a competent surveyor and chain carriers to run the same and shall, with the best evidence which they can procure, direct their surveyor where to run the line and shall have him mark the same [and] require [him] to make two plats of the courses and distances of the line."

Code § 15.1-1028 provides that the commissioners shall return the plats "to the respective courts by which they were appointed, together with their report of the performance of their duties in ascertaining and establishing the line." If the report meets "the requirements of this section . . . and if it be unanimous," the courts shall approve it. In all controversies thereafter "touching the location of such line," the reports and plats "shall be taken as conclusive evidence."

Under Code § 15.1-1030, if the commissioners fail to agree on the location of the line, either of the localities involved may file a petition in the circuit court of either jurisdiction and have the true boundary line ascertained and established by a three-judge court. The court shall hear the case without a jury and ascertain and establish the true boundary line by a majority decision. The Supreme Court may grant an appeal to either party.

### *Appropriateness of Code §§ 15.1-1026 to -1031.*

Chesapeake argues that the procedure outlined in Code §§ 15.1-1026 to -1031 "would be useful in locating boundaries which have become obscure due to the loss of monuments used in the description," for example, where a river "has changed its course." The outlined procedure, however, is not appropriate here, Chesapeake says, because the boundary between Portsmouth and Chesapeake has not become obscure due to the loss of any natural or artificial monuments.

Chesapeake argues further that the issue here is confined to the meaning of the term, " 'right-of-way' line," as used in the 1959 annexation decree. What the term means in this context, Chesapeake maintains, is a legal question, and the resolution of the question is a judicial function which should not be delegated to commissioners. Because the case involves interpretation of a term used by judges in a judicial decree, Chesapeake submits, only another judge should be permitted to make the interpretation.

■ We disagree with Chesapeake. We find nothing in the language of Code §§ 15.1-1026 to -1031 which would confine the use of the statutory procedure to instances where boundary lines have become obscure due to the loss of monuments. In clear terms, the procedure is made to apply *whenever* a doubt exists or a dispute arises concerning the boundary line between two localities. The source or cause of a doubt or dispute sufficient to trigger application of the statutory procedure is not limited in any way; the statutory language is broad enough to include a doubt or dispute stemming from the terms of an annexation decree as well as a controversy resulting from a river changing its course.

■ Furthermore, Chesapeake has pointed to no limitation upon the authority of the General Assembly to provide for the use of commissioners in boundary line disputes, and we are not aware of any limitation. Indeed, we have previously recognized the extent of the General Assembly's authority in this respect. Although

speaking in a different context, we said in *Newport News v. Warwick County*, 191 Va. 591, 61 S.E.2d 871 (1950), that the enactment by the General Assembly of what is now Code §§ 15.1-1026 to -1031 "was clearly within the legislative power." *Id.* at 597, 61 S.E.2d at 874.

■ Neither are we aware of any reason to say that the statutory procedure would be rendered inappropriate whenever a decision on a question of law or the interpretation of an annexation decree might become necessary in a boundary line dispute. Certainly nothing in the statutory language would exclude either situation, and we are not free to write such an exclusion into the statute.

■ Nor are we free to question the wisdom of permitting lay commissioners to decide issues of law and to interpret annexation decrees. Whether legislation is wise is a question for the General Assembly, and not this Court. *Carter, Adm'r v. Nelms*, 204 Va. 338, 346, 131 S.E.2d 401, 406 (1963).

Even so, Chesapeake says, the use of commissioners, surveyors, and chain carriers would be fruitless in this case; these laymen could do no more than "redraw the [boundary] line two ways," one according to Portsmouth's view and the other according to Chesapeake's view. This would resolve nothing, Chesapeake opines, and only result in unnecessary expense.

■ We reject this argument. Doubtless, upon remand of these cases, each trial court will instruct the commissioners it appoints that they must ascertain and establish one of the two lines in dispute as the true boundary line between Portsmouth and Chesapeake. Chesapeake's argument suggests that the commissioners would disregard their instructions and merely "redraw the line two ways." We will not assume that the commissioners would treat their instructions so lightly. We assume, instead, that, as the statutory procedure requires, they will first employ a competent surveyor and chain carriers and then "proceed to ascertain and establish the true line."

■ We will also assume that once the commissioners have established the true line, they will, in accordance with the statutory procedure, "direct their surveyor where to run the line and shall have him mark the same." It may be that the duties of the surveyor will not be as great in this case as in a situation where, for example, a river has changed its course. But, in the interest of avoiding future disputes over this boundary line, a description of

the line more precise than the one used in the annexation decree and a marking more permanent than the one made in 1959 are needed.

Finally, Chesapeake argues that the "most appropriate" way to resolve this controversy is by a declaratory judgment proceeding. Such a proceeding is proper, Chesapeake states, in a case of actual controversy, and an actual controversy exists in this case "over the construction of words used in the annexation decree."

■ We disagree. We said in *Newport News v. Warwick County, supra,* that in enacting what is now Code §§ 15.1-1026 to -1031, the General Assembly "has *fully* set forth the procedure for settling disputed boundary lines." 191 Va. at 597, 61 S.E.2d at 874 (emphasis added). The procedure is indeed outlined fully and completely in every detail, providing for each step from the beginning to the end of a case cognizable under the statute. We think the General Assembly intended the procedure outlined in Code §§ 15.1-1026 to -1031 to be preemptive, precluding the use of any other procedure for the settlement of boundary line disputes between localities.

### *Laches.*

The remaining question is whether the Circuit Court of the City of Chesapeake erred in dismissing Portsmouth's petition on the ground the petition was barred by laches. We think the court did err in this respect.

■ Laches, a species of estoppel, is an equitable defense. The procedure invoked by Portsmouth is purely statutory, conferring only legal, not equitable, rights. A proceeding to enforce a legal right is not subject to the equitable defense of laches. *Grenco v. Nathaniel Greene,* 218 Va. 228, 233, 237 S.E.2d 107, 111 (1977); *Finkel Products v. Bell,* 205 Va. 927, 933, 140 S.E.2d 695, 699 (1965); *McClanahan v. Norfolk & W.R. Co.,* 118 Va. 388, 412, 87 S.E. 731, 740 (1916); *Motley v. Carstairs,* 114 Va. 429, 432, 76 S.E. 948, 949 (1913).

■ Furthermore, laches or estoppel is not available as a defense against a municipality acting in its governmental capacity. *See Segaloff v. City of Newport News,* 209 Va. 259, 261, 163 S.E.2d 135, 137 (1968); *Supervisors v. N. & W.R. Co.,* 119 Va. 763, 790, 91 S.E. 124, 133 (1916); *Norfolk & W.R. Co. v. Supervi-*

*sors*, 110 Va. 95, 103, 65 S.E. 531, 534 (1909).[2] Protecting municipal boundary lines is governmental activity. *Newport News* v. *Warwick County*, 191 Va. at 598, 61 S.E.2d at 874.

For the reasons assigned, we will reverse the order of dismissal in each case, reinstate Portsmouth's petition in each trial court, and remand the cases for the appointment of commissioners and further proceedings pursuant to Code §§ 15.1-1026 to -1031. We will also reverse the order of the Circuit Court of the City of Chesapeake allowing Alcoa to intervene in the Chesapeake proceeding, and we will dismiss Alcoa as a party.[3]

*Reversed and remanded.*

---

[2] Chesapeake also argues the "doctrine of acquiescence" in defense of Portsmouth's claim to the territory in dispute. This ground was not asserted in Chesapeake's motion to dismiss, however, and we will not comment on its possible application. We will observe that the facts relied on by Chesapeake are not sufficient to establish acquiescence on the part of Portsmouth in the location of the boundary line as claimed by Chesapeake.

[3] Although Alcoa is dismissed as a party, upon remand, it will be "entitled to appear before the boundary commissioners and present such evidence as it [has] touching the true boundary line between [Portsmouth and Chesapeake]." *Newport News* v. *Warwick County*, 191 Va. at 599-600, 61 S.E.2d at 875.