478

## BOARD OF SUPERVISORS OF WASHINGTON COUNTY

### V.

## WILLIAM A. BOOHER, ET AL.

Record No. 831807

January 16, 1987

Present: All the Justices

*Joseph L. Howard, Jr., County Attorney*, for appellant.
*(David H. Frackelton; Widener and Frackelton*, on brief), for appellees. Appellees submitting on brief.

POFF, J., delivered the opinion of the Court.

This is an appeal from a decree authorizing a businessman to operate an automobile graveyard in a district where such a business is not one of the uses permitted by the zoning ordinance. The decree was entered on the zoning authority's petition for injunction to enforce the ordinance, the landowner's answer and answers to interrogatories, certain exhibits filed with the pleadings, and argument of counsel. No testimony was adduced, and we review the facts as disclosed by the documents of record.

The Board of Supervisors of Washington County (the Board) enacted the County's zoning ordinance in 1971. The ordinance did not classify automobile graveyards as permitted land uses in any zone. In 1975, William A. Booher and Verta G. Booher acquired a 37-acre tract of land in a district zoned A-2, agricultural. Booher filed an application to rezone his property to B-2, business general. At a public hearing conducted before the County's planning commission (the commission) on July 16, 1975, Booher testified that "we planned to dismantle [automobiles] and sell used parts and have remainders crushed."

In a report filed with the Board, the commission stated: "This property will be used, according to the application for '. . . a garage and used car parts'. This is recommended unanimously by the Planning Commission, but I am not sure they were aware of the 'used car parts' portion of the request and of the fact that this implies a junk yard or automobile graveyard. If Mr. Booher is

present it may be wise to question him about this and be sure that a junk yard is not what is being considered here."

Booher attended the Board's public hearing in August 1975. In answers to interrogatories, Booher said that he specifically told the Board that "this property was to be used as a motor vehicle graveyard and junkyard" and that he "intended to store junk, wrecked, disabled or inoperative motor vehicles on this property". According to the August 6, 1975 minutes of the Board's meeting, "it was resolved that this Board does hereby accept the recommendations of the Planning Commission and that the request for rezoning . . . should be and it is hereby . . . [approved]."

Booher spent "[a]pproximately $30,000" enlarging a barn and grading the property for use as a motor vehicle graveyard. In response to a complaint registered by Booher's neighbor, the County's zoning administrator inspected the property. In a letter dated March 28, 1978 addressed to the neighbor, he stated that he had "researched our County Code" and had found "Mr. Booher's operation to be in order and in compliance with the standards of the Code."

In October 1981, the zoning ordinance was amended to authorize the Board to grant conditional use permits for automobile salvage yards in districts zoned M-2, industrial, and Booher filed an application to rezone his property from B-2 to M-2. The commission disapproved his application, and in March 1982, the Board denied it. The Board instructed Booher to discontinue operations and to remove approximately 800 vehicles stored on the property. Booher elected not to appeal the Board's decision and to disregard the Board's instructions.

In a petition filed November 30, 1982, the Board asked the court to enjoin William A. Booher, Verta G. Booher, and Dolphus Booher from violating the zoning ordinance and to require the defendants to remove the vehicles from the property. In their answer, the defendants asserted that "their business operation is prudently operated under color of law in accordance with the . . . action of the [Board]"; that "[t]he business operation . . . bears the further certification" of the Board acting through the zoning administrator; and, consequently, that the prayer of the petition filed by the Board is barred by the doctrines of estoppel and laches.

Contending that Booher's defenses were insufficient as a matter of law, that Booher had admitted all the essential elements of a

zoning violation, and that no material facts were in issue, the Board moved for summary judgment on the record. In a final decree entered August 11, 1983, the chancellor ruled that the Board had approved Booher's property in 1975 "for use as an automobile graveyard in conjunction with Defendants' salvage and parts business", that "no zoning requirements for such business was [sic] contemplated until 1981", and that "accordingly the defendants' business operation is entitled to continue under the 'Grandfathers Clause'."

On appeal, the Board assumes that the decree denying its motion for summary judgment was based on the doctrines of estoppel and laches. Neither applies to a local government in the discharge of its governmental functions. *Segaloff* v. *City of Newport News*, 209 Va. 259, 261, 163 S.E.2d 135, 137 (1968) (estoppel); *City of Portsmouth* v. *City of Chesapeake*, 232 Va. 158, 164, 349 S.E.2d 351, 354 (1986) (laches).

However, it does not appear from the face of the decree that the chancellor premised his decision on either of these doctrines. As we interpret the decree, he concluded that the Board had implicitly authorized Booher to use his property for an automobile graveyard "in conjunction with [his] salvage and parts business" when it rezoned his property in 1975; that the property was used for that purpose before the enactment of the 1981 amendment requiring a conditional use permit for such use; and, hence, that Booher's operation was a lawful non-conforming use.

We believe the chancellor erred. As part of its police powers, the sovereign is vested with the power to zone private property. In Title 15.1, Chapter 11, Article 8 of the Code, the sovereign has delegated that power, carefully defined and circumscribed, to the governing bodies of counties and municipalities. The governing bodies are authorized to exercise that power "by ordinance". Code § 15.1-486. The ordinance may provide "[f]or the granting of special exceptions", Code § 15.1-491(c), and, after notice and a hearing, the Board is authorized to act upon "[a]pplications for special exceptions . . . made by any property owner", Code § 15.1-496.

The County's zoning ordinance was adopted in 1971. In 1975, Booher filed an application to rezone his property from A-2 to B-2. He told the commission and the Board that he planned to operate an automobile graveyard, and the Board rezoned his property. It may be that the Board intended thereby to grant Booher a

special exception. But an automobile graveyard was not then and is not now a permitted use in a B-2 zone,* Booher did not apply for a special exception in that zone, the Board had no power to grant an exception by implication, and the county government is not bound by the zoning administrator's opinion to the contrary.

The record before us shows that Booher is operating an automobile graveyard in violation of the zoning ordinance applicable to his land, and we hold that the chancellor should have granted the Board's motion for summary judgment. We will reverse the decree and remand the cause with instructions to enter a new decree in accord with the views expressed in this opinion.

*Reversed and remanded.*

---

* The "grandfather" clause in the zoning ordinance applied only to automobile graveyards "in existence on December 31, 1971". Washington County Code § 14-107(e).