# CIRCUIT COURT OF PRINCE GEORGE COUNTY

Lloyd F. Staples,
Kathie K. Staples,
and South Forty Resort, Inc.

v.

Prince George County

November 2, 2010

Case No. (Civil) CL10-33

By Judge W. Allan Sharrett

This matter comes before the Court on Defendant's motion to dismiss and on the parties' cross motions for summary judgment. The Court heard argument by counsel on August 4, 2010, and requested further written argument on the legal issues presented. Having considered the arguments and all applicable law, the Court, for the following reasons, denies Defendant's motion to dismiss, grants Defendant's motion for summary judgment, and denies Plaintiff's motion for summary judgment.

## I. *Summary of Facts*

Plaintiffs are the current owners and operators of South Forty Resort, Inc., a campground located on approximately 37 acres of land near the

Courtland Road exit from Interstate 95 in Prince George County, Virginia. The property is zoned R-A, Resident Agricultural, but has functioned as a campground since 1969, when the initial owner, as part of Kampgrounds of America, obtained a conditional use (now special exception) permit to operate a campground. The conditional use permit included the following condition: "Campers be limited to a maximum of 14 days."

The length-of-stay restriction was included because of a County ordinance that, Plaintiffs allege, was adopted from the Virginia State Parks Regulations governing state parks. The relevant regulation, located at 4 Va. Admin. Code 5-30-150(D), provides in pertinent part: "Camping periods. No camping shall be permitted in excess of 14 nights within a 30-day period."

The initial zoning approval only applied to that owner and, therefore, did not "run with the land." Accordingly, any new owner would have to apply for a new special exception permit in order to continue the campground use.

In 1973, four years after the campground opened, the Prince George County Board of Supervisors ("the Board") adopted an ordinance of general application reiterating the fourteen-day camping limit at any "recreational vehicle park": "Unit spaces in a recreational vehicle park shall be rented by the day or week only, and the occupant of a unit space shall not remain in the same recreational vehicle park more than 14 days." Prince George County Code of Ordinances, Article 3, § 50-76. Section 50-71 defines "recreational vehicle park" as "a parcel of land in which one or more spaces is occupied or intended for occupancy by units for transient dwelling purposes." That section further defines "Unit" as "a travel trailer, pickup camper, motor home, tent trailer, tent, or similar device used for temporary portable housing."

In 1981 the campground was sold. The new owners did not obtain zoning at the time of purchase that would allow a campground use, even though the prior special exception zoning expired at the time of the sale. These owners did later receive zoning approval, however, to expand the number of camping spaces, and they continued to operate the campground until they eventually sold it to the current owners, the Staples, in 2007.

Like the situation before, the special exception zoning was conditioned upon ownership, and so it expired at the time of the sale. The Staples, however, were unaware of the need to acquire new zoning approval to operate a campground, and they continued to operate the campground under the mistaken belief that the prior special exception zoning was still in effect.

On January 27, 2009, the County received a complaint that visitors to the campground were exceeding the fourteen-day stay limit. An inspection by the County disclosed permanent fixtures attached to recreational vehicles and mobile home units in the campground, as well as unlicensed vehicles parked alongside the units, leading County officials to conclude that the

occupants were residing in the campground for periods longer than fourteen days. Indeed, both parties acknowledge that, since the campground first opened, many of its occupants have stayed there far longer than fourteen days.

For example, in their Complaint, Plaintiffs state the following:

> According to the records of the Defendant, this property was utilized as a KOA certified campground from 1969 until the late 1990s, now operating as a certified Goodsam [sic] Park.
>
> During this period of time, the financial liability and income earned on the park from the previous owners was based upon "long term" visitors who for instance, were on temporary duty to Fort Lee, Virginia, or were on a temporary employment assignment.
>
> Approximately 50 of the sites of this park were occupied by individuals who fit the description found in Paragraph 6 [above] of this Complaint. . . .
>
> For over 40 years, the County of Prince George has known about the existence of long term stay visitors to the campgrounds and . . . has recognized several of the long term guests as residents and taxed their personal property.

Compl. at Para. 5-7, 55. In its response, the County states that "Anecdotal evidence from the school administration indicates that school bus drivers have been picking up public school students at the campground location for many years." Def. Mem. in Supp. of Mot. to Dismiss and to Vacate Temp. Inj. at p. 2, n. 1.

In response to that inspection, the Staples applied for a special exception permit on March 31, 2009, to continue operating the campground. The Board of Supervisors considered their application on July 14, 2009, and subsequently approved special exception zoning for a campground, but subject to certain conditions, one of which is at issue in this case. Condition # 4 provides as follows: "Campers shall be limited to a maximum stay of fourteen (14) *consecutive* days within the park." (emphasis added).

At the public hearing to consider their application, the Staples had objected to this condition on the grounds that the limitation had never previously been enforced and that the campground's economic survival depended upon the existence of several "long-term" occupants. Nonetheless, when the Board ultimately approved their request, Condition # 4 was still listed as one of the conditions governing the use of the property.

On November 30, 2009, County officials conducted a follow-up inspection of the campground and determined that the campground was in violation of the fourteen-day stay limit. The County's planning director issued a Notice of Violation to the Staples, which advised them of their

right to appeal the notice within thirty days to the Prince George Board of Zoning Appeals.

The Staples took no action to appeal either the special exception zoning granted on July 14th or the Notice of Violation issued on November 30th. Instead, the Staples filed the present five-count Complaint in the circuit court on January 19, 2010, seeking a declaratory judgment and injunctive relief.

In Count One, Plaintiffs allege that the "fourteen day consecutive stay limitation" violates "Dillon's Rule," thereby making either Condition # 4 or Ordinance 50-76 void. In Count Two, they allege that the Board did not have the authority to impose involuntary conditions on Plaintiff's special use permit. Count Three alleges that the ordinance and the condition violate Plaintiff's constitutional rights of due process and equal protection. Count Four alleges that the County is estopped from enforcing the fourteen-day stay limitation. In Count Five, Plaintiffs seek a permanent injunction to prevent the County from enforcing the fourteen-day consecutive stay limit.

In response, the County has filed a Motion to Dismiss along with a Motion for Summary Judgment. Plaintiffs, in turn, have also filed their own Motion for Summary Judgment.

## II. *Defendant's Motion to Dismiss*

As an initial matter, the Court must address whether it has subject-matter jurisdiction over this case. In its Motion to Dismiss, the County argues that the Staples failed to contest the decisions of either the planning director or the Board of Supervisors within the thirty-day appeal periods provided in Va. Code §§ 15.2-2285(F) and 15.2-2314, and therefore they are estopped from collaterally attacking either decision since they failed to exhaust their administrative remedies before filing a declaratory judgment action in the circuit court.

As a general rule, administrative remedies must be exhausted before a court will take cognizance of a zoning dispute. *Board of Supervisors v. Market Inns, Inc.*, 228 Va. 82, 86, 319 S.E.2d 737, 739-40 (1984). "The requirement that a landowner must exhaust his administrative remedies before filing a declaratory judgment action is based on the principle that courts do not address issues based on circumstances which may never materialize." *Dail v. York County*, 259 Va. 577, 582, 528 S.E.2d 447, 449 (2000). "If the landowner can obtain a variance or other modification of the challenged ordinance as applied to his property, the landowner would no longer be prejudiced by the ordinance and would have no standing to attack the ordinance." *Id.* (citing *Gayton Triangle Land Co. v. Henrico County*, 216 Va. 764, 766, 222 S.E.2d 570, 572 (1976)).

The exhaustion of administrative remedies doctrine, however, does not apply when the suit challenges the validity of the zoning ordinance

itself. *Town of Jonesville v. Powell Valley Village, L.P.*, 254 Va. 70, 487 S.E.2d 207 (1997). The reason for this is that judicial review of a zoning decision is limited to the issues delineated in the statute governing the appeal to a circuit court. In *Board of Zoning Appeals v. University Square Associates*, 246 Va. 290, 435 S.E.2d 385 (1993), the Supreme Court of Virginia recognized that, under the limited standard of review provided in the statute governing zoning appeals, "the certiorari process does not authorize a trial court to rule on the validity or constitutionality of legislation underlying a board of zoning appeals decision." *Id.* at 294, 435 S.E.2d at 388. Therefore, to raise an *ultra vires* or Dillon's Rule challenge, a property owner must bring a direct action against the local governing body, which Plaintiffs in this case have done. *See Norton v. City of Danville*, 268 Va. 402, 602 S.E.2d 126 (2004).

In its Motion to Dismiss, the County claims that the Staples' failure to appeal the Board's zoning decision within the statutorily-prescribed time period means that the Board's decision became "a thing decided" which cannot be collaterally attacked later in a different proceeding. Plaintiffs in this case, however, are not attacking the reasonableness of the Board's action. Rather, they are challenging the Board's power to enact and enforce the fourteen-day rule.

An appeal to the circuit court for a review of the board of supervisor's zoning decision is a different matter than an independent suit to determine whether a challenged ordinance is a valid exercise of the county's zoning authority. A county's board of supervisors and its planning director must necessarily interpret zoning ordinances to execute their responsibilities, and their interpretation of an ordinance can be challenged on appeal to the circuit court. That obligation, however, "does not give rise to a power to declare these ordinances invalid. That is a determination within the sole province of the judiciary." *Id.* at 74, 487 S.E.2d at 210. Because Plaintiffs in this case are questioning the constitutionality of the ordinance itself and whether the Board had the power to adopt and enforce the fourteen-day maximum stay rule, there was "no administrative remedy equal to the relief sought" in Counts One and Three of the Complaint. *Board of Supervisors v. Rowe*, 216 Va. 128, 133, 216 S.E.2d 199, 205 (1975). Accordingly, Plaintiffs were not required to appeal the Board's zoning decision.

In *Scottsdale Ins. Co. v. Glick*, 240 Va. 283, 289, 397 S.E.2d 105, 108 (1990), the Supreme Court held that, in a declaratory judgment action, the trial court may resolve only issues that have been pleaded specifically in the petition for declaratory judgment. Here, Plaintiffs are seeking a determination as to whether the County exceeded its powers in adopting Ordinance 50-76 and imposing Condition # 4 and also whether those actions are constitutional. Therefore, because Plaintiffs are directly challenging the validity of those laws in an action against the County, the Court finds that it does have subject-matter jurisdiction to resolve this

dispute. While the Board's exercise of its discretion is not reviewable at this point, the constitutional issues raised in the Complaint are reviewable and are properly before the Court. Therefore, the County's Motion to Dismiss is denied.

### III. *Summary Judgment*

Summary judgment is a procedure which gives courts the ability to end litigation at an early stage of the proceedings where it "clearly appears *that one of the parties is entitled to a judgment as made out by the pleadings and the parties' admissions.*" *Renner v. Stafford*, 245 Va. 351, 353, 429 S.E.2d 218 (1993). Summary judgment is proper only when there are no material facts genuinely in dispute. *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993); Va. Sup. Ct. R. 3:18, 3:20. Because the parties stipulated that there are no facts in dispute, this case may be resolved on the cross-motions for summary judgment.

In their Complaint, Plaintiffs seek declaratory judgment on five different grounds. But in their Motion for Summary Judgment, Plaintiffs' only argument is that the County's enforcement of Ordinance 50-76 violates "Dillon's Rule." Although Plaintiffs seek summary judgment on the other four issues, presumably it relies only on the allegations contained in the Complaint. The County's Motion for Summary Judgment addresses each of the five grounds, however, and for that reason the Court will consider each of the five counts below.

### A. *Dillon's Rule*

In Count One of their Complaint, Plaintiffs allege that the County's enforcement of Ordinance 50-76 violates "Dillon's Rule." "In determining the legislative powers of local governing bodies, Virginia follows the Dillon Rule of strict construction." *Richmond v. Confrere Club of Richmond, Inc.*, 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990). "The Dillon Rule provides that municipal corporations possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." *Id.* In *Board of Supervisors v. Horne*, 216 Va. 113, 117, 215 S.E.2d 453, 455-56 (1975), the Supreme Court of Virginia discussed the application of the Dillon Rule to counties:

> In Virginia the powers of boards of supervisors are fixed by statute and are limited to those conferred expressly or by necessary implication. This rule is a corollary to Dillon's Rule that municipal corporations have only those powers expressly

granted, those necessarily or fairly implied therefrom, and those that are essential and indispensable.

*Id.* (citations omitted). "If there is any reasonable doubt whether legislative power exists, that doubt must be resolved against the local governing body." *Id.* Plaintiffs claim that summary judgment in their favor is appropriate because there is reasonable doubt as to whether the County has the power to regulate the length of stay for guests at a campground.

Plaintiffs are not disputing the fact that localities, as part of their police power, are authorized to establish and regulate zoning districts. Indeed, Va. Code § 15.2-2283 identifies the police power as the primary purpose behind the establishment of zoning districts: "Zoning ordinances shall be for the general purpose of promoting the health, safety, or general welfare of the public and of further accomplishing the objectives of § 15.2-2200."

Section 15.2-2200 provides as follows:

This chapter is intended to encourage localities to improve the public health, safety, convenience and welfare of its citizens and to plan for the future development of communities to the end that transportation systems be carefully planned; that new community centers be developed with adequate highway, utility, health, educational, and recreational facilities; that the need for mineral resources and the needs of agriculture, industry, and business be recognized in future growth; that residential areas be provided with healthy surroundings for family life; that agricultural and forestal land be preserved; and that the growth of the community be consonant with the efficient and economical use of public funds.

Va. Code Ann. § 15.2-2200 (2010).

Rather, Plaintiffs are contending that the County exceeded the scope of its powers by adopting and enforcing the fourteen-day maximum stay rule because there is no express statutory provision or implied provision that would permit a locality to regulate the length of stay for guests at a campground. The County, on the other hand, says that it does have the authority to impose limitations on stays at campgrounds by ordinance under either its police power or its power to rezone property through special exceptions. The Court agrees with the County.

It is well established in Virginia that local governments are allowed wide discretion when it comes to enacting zoning ordinances. *See, e.g., Byrum v. Board of Supervisors,* 217 Va. 37, 39, 225 S.E.2d 369, 371 (1976) ("Local governing bodies, because of their knowledge of local

conditions and the needs of their individual communities, are allowed wide discretion in the enactment and amendment of zoning ordinances."); *Board of Supervisors v. Snell Construction Corp.*, 214 Va. 655, 658, 202 S.E.2d 889, 892 (1974) ("The legislative branch of a local government in the exercise of its police powers has wide discretion in the enactment and amendment of zoning ordinances."). The Court finds that it is a valid use of the police power for a local governing body to adopt an ordinance which limits visitors at local campgrounds to a maximum of fourteen consecutive days. It is rational to believe that the decision not to permit long-term stays at area campgrounds was done in order to improve the public health, safety, convenience, and welfare of local citizens.

Beyond the County's police power, the Court also finds that the power to adopt such an ordinance is derived from express grants of authority found in the Code of Virginia. Va. Code § 15.2-2280, for example, authorizes localities to establish zoning districts. In each district a locality "may regulate, restrict, permit, prohibit, and determine the following: the use of land, buildings, structures and other premises for agricultural, business, industrial, residential, flood plain and other specific uses. . . ." *Id.* Ordinance 50-71 establishes that visitors to the campground may use the land for "for transient dwelling purposes." To clarify the meaning of "transient," and to further emphasize that a campground is to be occupied for short-term stays only, Ordinance 50-76 establishes the maximum amount of time in which a visitor can occupy one of the units at the campground.

Moreover, the Virginia Code expressly allows for conditions to be imposed on the granting of conditional use permits. Va. Code § 15.2-2286(A)(3) provides that, "For the granting of special exceptions under suitable regulations and safeguards; notwithstanding any other provisions of this article, the governing body of any locality may reserve unto itself the right to issue such special exceptions." Thus, Va. Code § 15.2-2286(A)(3) lists as a specific governmental act issuance by a local governing body of special exceptions under suitable regulations and safeguards. Issuing a special exception with a condition that limits campers to a stay of fourteen consecutive days is a suitable condition which ensures that occupants limit their stays to no more than fourteen days, thereby further distinguishing a campground from a site with permanent dwellings.

Despite these provisions, Plaintiffs claim that Title 35.1 of the Code of Virginia supersedes the right of localities to regulate the length of stay for campground visitors. Plaintiffs point specifically to Va. Code § 35.1-9, which, they argue, forms the crux of the matter. Section 35.1-9 provides as follows:

> *This title and the regulations of the Board [of Health] shall supercede all local ordinances regulating hotels, restaurants, summer camps, and campgrounds other than those adopted*

*pursuant to the provisions of § 35.1-26,* except that any locality may adopt ordinances regarding (i) the sale, preparation, and handling of food; (ii) swimming pools, saunas, and other similar facilities; (iii) the keeping of guest registers by hotels; (iv) the display of signs alongside or in plain view of any public roadway to preclude false or misleading advertising thereon to the extent prohibited by § 18.2-217, provided such ordinances are equivalent to or more stringent than the provisions of this title or Title 18.2 in the case of the false or misleading advertising thereon to the extent prohibited by § 18.2-217, and the regulations of this Board. *Nothing in this section shall be construed to limit or affect in any way the powers given to localities under Title 15.2, or under any city charter, or under any other general or special act.*

Va. Code Ann. § 35.1-9 (2010) (emphasis added).

Title 15.2 concerns the state's police power, which, as mentioned above, has been delegated by the General Assembly to the local governing bodies. Section 15.2-2200 is a broad and explicit grant of authority to the localities to use their discretion in deciding what local measures will best further the health, safety, and welfare of their citizens.

The last sentence of Va. Code § 35.1-9 makes it clear that the Board of Health's regulation of restaurants, hotels, summer camps, and campgrounds does not impact a locality's ability to adopt zoning ordinances through its police power, nor does it impact a locality's authority to impose conditions on the grants of special use permits, since these are both legitimate powers identified within Title 15.2. *See* Va. Code §§ 15.2-2280 and 15.2-2286(A) (3). Therefore, this Court finds that the power to adopt zoning ordinances and impose restrictions on the maximum length of stay for visitors at a campground derives from an express power of the County, which means that Ordinance 50-76 does not violate Dillon's Rule.

Despite the clear and unambiguous language of Va. Code § 35.1-9, Plaintiffs urge the Court to consider only the first sentence of that section and to interpret it to mean that the Board of Health's authority to regulate campgrounds abolishes all local authority to regulate matters within campgrounds. This the Court will not do. "[W]hen a statute is clear and unambiguous, its plain meaning must be accepted without resort to extrinsic evidence or to the rules of construction. Legislative intent is determined from the plain meaning of the words used." *Confrere Club of Richmond, Inc.,* 239 Va. at 80, 387 S.E.2d at 473 (citations omitted). "When legislative intent is plain, we must respect it and give it effect." *Id.*

If one considers the actual Code section which discusses the areas within a campground that are governed by the Board of Health, it becomes

evident that the areas within the Board's control are limited to matters of public health. Section 35.1-17 provides as follows:

*Regulations Governing Campgrounds.*

A. The regulations of the Board governing campgrounds shall include minimum standards for (i) an approved drinking water supply; (ii) an approved sewage disposal system; (iii) an approved solid waste disposal system; (iv) the proper maintenance of buildings, grounds, and equipment; (v) vector and pest control; (vi) toilet, swimming, and bathing facilities, including shower facilities; (vii) effective measures for the control of animals and pets; (viii) appropriate procedures and safeguards for hazardous situations, including specifically the maintenance and sale of propane gas or other explosives and combustibles; and (ix) a procedure for obtaining a license.
B. The Board may in its sole discretion prescribe regulations for classes of campgrounds and different requirements for each class.

Va. Code Ann. § 35.1-17 (2010). Thus, the regulations of the Board of Health shall prevail over all local ordinances regarding approved drinking water supplies, sewage disposal, solid waste disposal, proper maintenance of buildings, grounds, and equipment, pest control, toilet and bathing facilities, the control of animals and pets, safeguards for hazardous situations, and procedures for obtaining a license. Nowhere in this section does it suggest that the state Board of Health's regulations shall include minimum standards for the zoning of campgrounds. This is not surprising given the fact that Va. Code § 35.1-9 makes it plain that the Board will not regulate the zoning of campgrounds, leaving that to the localities under Title 15.2. Indeed, the actual Board of Health regulations are even clearer that state regulation of campgrounds is to be done in conjunction with all applicable local ordinances. 12 Va. Admin. Code § 5-450-20 provides as follows:

In addition to the requirements of this chapter, all applicable local ordinances, including plumbing, building, electrical, and zoning ordinances shall also apply in the construction, maintenance, and operation of all campgrounds.

12 Va. Admin. Code § 5-450-20.
Nor does Title 35.1 establish the Board of Health's authority to establish reasonable length-of-stay restrictions at campgrounds. Such

a provision is included in the Virginia Administrative Code, however. 4 Va. Admin. Code § 5-30-150(D) identifies the length-of-stay restriction for campgrounds as established by the Virginia Department of Parks and Recreation:

> *Camping periods.* No camping shall be permitted in excess of 14 nights within a 30-day period. Park managers shall have the authority to increase the number of nights. Check-in time shall be 4 p.m. Check-out time is 3 p.m. Campers may be permitted to occupy campsites prior to 4 p.m., but no earlier than 8 a.m., if campsites are available. Any personal property left at the campsite after the reservation period check-out time shall be removed by park staff at the owner's expense.

4 Va. Admin. Code § 5-30-150(D).

In spite of these facts, Plaintiffs nonetheless urge the Court to apply several rules of statutory construction to interpret Va. Code § 35.1-9. Essentially, plaintiffs argue that, when it comes to campgrounds, local authority to regulate matters is limited to the four enumerated areas, namely the sale, preparation, and handling of food; swimming pools, saunas, and other similar facilities; the keeping of guest registers by hotels; and the display of signs alongside or in plain view of public roadways. Plaintiffs claim that "none of those areas have anything to do with the subject matter of the old 1973 ordinance article 3, 50-76." Again, this is not surprising given the fact that the Board of Health does not concern itself with zoning ordinances. Thus, the Court is not swayed by this argument.

The last argument by Plaintiffs regarding statutory construction is that this Court apply the rule known as "the old law, the evil, and the remedy." To support its position, Plaintiffs rely on legislative history, specifically a "Report of the Virginia Code Commission" identified as House Doc. 11 of the 1981 General Assembly session, which says "except for local ordinances governing the sale, handling, and preparation of food in restaurants, all local authority to regulate matters involved in Title 35 has been abolished in favor of uniform requirements throughout the Commonwealth." This passage, however, does not overcome the fact that there is no reasonable doubt that the legislature did not intend to take away from a locality the exercise of its police power. Therefore, the Court finds that, as part of the Board of Health's regulation of certain areas of campgrounds, the General Assembly recognizes that local governments have certain concurrent powers over campgrounds as well.

By enacting Title 35.1, the General Assembly did not intend to prohibit local governments from utilizing zoning as a means of controlling the length of stay of visitors at local campgrounds. Title 35.1 defines a campground as follows:

> "*Campground*" means and includes but is not limited to a travel trailer camp, recreation camp, family campground, camping resort, camping community, or any other area, place, parcel, or tract of land, by whatever name called, on which three or more campsites are occupied or intended for occupancy, or facilities are established or maintained, wholly or in part, for the accommodation of camping units *for periods of overnight or longer*, whether the use of the campsites and facilities is granted gratuitously, or by rental fee, lease, or conditional sale, or by covenants, restrictions, and easements. "Campground" does not include a summer camp, migrant labor camp, or park for mobile homes. . . .

Va. Code Ann. § 35.1-1(2) (2010) (emphasis added). This Code section does not establish a length-of-stay restriction for visitors; instead, it says that a campground is established for the accommodation of camping units "for periods of overnight or longer." This legislation and the accompanying regulations do not preclude a locality from utilizing valid zoning ordinances to impose an objective limit on how long that period of accommodating camping units should last. Indeed, given the fact that the Virginia Department of Parks and Recreation imposes a length-of-stay restriction on camping in state parks to a period of "14 nights within a 30-day period," 4 Va. Admin. Code § 5-30-150(D), it logically follows that a locality could impose a similar limit on the time period for camping in local campgrounds. Thus, the regulations governing campgrounds in Title 35.1 and the limits imposed by Ordinance 50-76 and the condition imposed on the grant of Plaintiff's special use permit can effectively be harmonized to give effect to both the state public health laws and local land use laws.

To conclude this issue then, the Court finds that Ordinance 50-76 and Condition # 4 do not violate Dillon's Rule, because the County has within its authority, pursuant to its police power and the power given unto it in Va. Code §§ 15.2-2280 and 15.2-2286(A)(3), the discretion to establish length-of-stay restrictions for visitors at local campgrounds. As a result, the County's Motion for Summary Judgment on this issue is granted, and the Plaintiff's Motion for Summary Judgment is denied.

## B. *Imposition of Involuntary Conditions on Special Use Permit*

The County's Motion for Summary Judgment is also granted as to Count Two of Plaintiff's Complaint. In Count Two, Plaintiffs allege that the Board's imposition of conditions upon the Plaintiff's application

for a special exception constituted invalid and illegal action because the conditions were involuntarily imposed. Thus, this allegation addresses the Board's general authority to impose conditions on the grant of a special use permit.

"The power to regulate the use of land by zoning laws is a legislative power, residing in the state, which must be exercised in accordance with constitutional principles." *Board of Supervisors v. Southland Corp.*, 224 Va. 514, 521, 297 S.E.2d 718, 721 (1982). "This power may be delegated to the political subdivisions of the state." *Id.* (citing *Civic Assoc. v. Chesterfield County*, 215 Va. 399, 209 S.E.2d 925 (1974)). Va. Code § 15.2-2280 authorizes the governing bodies of Virginia counties to adopt local zoning ordinances. Section 15.1-2286(A)(3) authorizes such governing bodies to reserve unto themselves the right to issue "special exceptions under suitable regulations and safeguards." The terms "special exception" and "special use permit" have been deemed to be interchangeable in Virginia. *Rinker v. City of Fairfax*, 238 Va. 24, 30, 381 S.E.2d 215, 218 (1989) ("The terms 'special exception' and 'special use permit' are interchangeable." (quoting *Southland Corp.*, 224 Va. at 521-22, 297 S.E.2d at 721-22)).

The term "special exception" refers to "the delegated power of the state to set aside certain categories of uses which are to be permitted only after being submitted to governmental scrutiny in each case, in order to insure compliance with standards designed to protect neighboring properties and the public." *Southland Corp.*, 224 Va. at 722, 297 S.E.2d at 722 (citations omitted). "The legislature may require certain uses, which it considers to have a potentially greater impact upon neighboring properties or the public than those uses permitted in the district as a matter of right, to undergo the special exception process." *Id.* These uses, although permitted in a zoning district, are made "subject to such limitations and conditions as public officials may impose in order to reduce the impact of the use upon neighboring properties and the public to the level which would be caused by those uses permitted as a matter of right." *Id.*

The unique characteristic of special use permits, which distinguishes them from conditional zoning, is the authority reposed in the locality to issue them "under suitable regulations and safeguards." Va. Code § 15.2-2286(A)(3). "This phrase is uniformly understood to mean that the locality may unilaterally *impose* reasonable conditions on the issuance of such permits or exceptions, in contrast to proffers that must come voluntarily from the applicant." John H. Foote, "Planning and Zoning," in *Handbook of Virginia Local Government Law* 1-1, 1-48 (Susan Warriner, ed. 2001) (emphasis in original).

While a court may therefore inquire into the reasonableness, as well as constitutional validity, of any involuntarily imposed condition to ensure that it is "suitable," Va. Code § 15.2-2286(A)(3), the Plaintiffs have only alleged that the condition was improper since it was a condition

not proffered by the Plaintiffs. As shown above, however, involuntary conditions are permitted within reasonable bounds. Plaintiffs' concerns here appear to be misplaced, because in their Complaint, Plaintiffs cite Va. Code § 15.2-2296 which refers to conditional zoning. As explained above, though, special use permits are regarded differently than proffered conditions voluntarily offered by a zoning applicant. In this case, Plaintiffs clearly applied for a Special Exception Permit. Therefore, because a local governing body is permitted to impose involuntary conditions on the grant of a special exception, the Court finds that the County's actions in this case were valid. As a result, the County's Motion for Summary Judgment on this issue is granted.

## C. *Alleged Constitutional Rights Violations*

Count Three of Plaintiffs' Complaint purports to raise due process and equal protection constitutional claims. Plaintiffs argue that, prior to adopting Ordinance 50-76 and imposing Condition # 4 on the Plaintiffs' special exception permit, the County failed to conduct any studies relating to the health and welfare of the guests visiting the campground. The lack of any such studies, argue Plaintiffs, establishes that the fourteen-day maximum stay rule has no real relationship to the health and safety of the visitors to the campground, thereby making such legislation "unreasonable." Plaintiffs also claim that the rule would cause an undue hardship on the Plaintiffs that would effectively close down the campground, and, furthermore, the lack of any length-of-stay restrictions on hotels in the area unlawfully discriminates against campgrounds as a class.

Land use decisions by local governing bodies are legislative actions enjoying a presumption of validity, which courts will not lightly overturn. *Bell v. City Council*, 224 Va. 490, 495, 297 S.E.2d 810, 813 (1982). The Virginia Supreme Court has stated that:

> The action of the local governing body in enacting or amending its zoning ordinance is presumed to be valid. Inherent in the presumption of legislative validity is a presumption that the classification that the ordinance contains, and the distinctions which it draws, are not arbitrary, not capricious, but reasonable. Where such presumptive reasonableness is challenged by probative evidence of unreasonableness, the ordinance cannot be sustained unless the governing body meets the challenge with some evidence of reasonableness. But the governing body is not required to go forward with evidence sufficient to persuade the fact-finder of reasonableness by a preponderance of the evidence. The burden is less stringent. If evidence of

reasonableness is sufficient to make the question "fairly debatable," the ordinance must be sustained.

*Board of Supervisors v. Southland Corp.*, 224 Va. 514, 522-23, 297 S.E.2d 718, 722 (1982) (citations omitted). Thus, a "zoning restriction is inviolate against an equal protection claim if it is reasonable and bears a rational relationship to a permissible state objective." *City of Manassas v. Rosson*, 224 Va. 12, 21, 294 S.E.2d 799, 804 (1982).

The Court finds that the County has presented enough evidence of reasonableness for the Court to sustain both Ordinance 50-76 and Condition # 4 which was imposed pursuant to that ordinance. The Court considers it reasonable for a County to regulate differently dwellings that use permanent structures from dwellings that use temporary structures such as a campground. There are inherent public safety, health, and welfare issues when citizens are living in close proximity to each other in structures not secured to the land and without permanent sanitary and water supplies. A length-of-stay restriction designed to emphasize that a campground is limited to short-term stays only is therefore reasonable under the circumstances. Speaking more generally, however, the County correctly points out that all local zoning ordinances differentiate between many types of housing, including long-term or short-term housing, low density versus high-density single-family homes, apartments, mobile homes, group homes, townhouses, prisons, and motels and hotels. A length-of-stay restriction designed to distinguish campgrounds, which are designed for transient dwelling purposes, is a valid restriction on the use of that land.

"The legislative branch of a local government in the exercise of its police powers has wide discretion in the enactment and amendment of zoning ordinances." *Snell Constr. Corp.*, 214 Va. at 658, 202 S.E.2d at 892. In exercising its police power, the County recognizes that such regulations may have the effect of restricting or limiting an individual's property rights. Indeed, the zoning statutes provided in the Code were written with the intent to "strike a deliberate balance between private property rights and public interests." *Snell Constr. Corp.*, 214 Va. at 655, 202 S.E.2d at 889. As part of achieving that balance, though, localities are not required to conduct studies that would establish that zoning ordinances are sufficiently related to the public health and welfare, as Plaintiffs suggest. The Court also finds that, without more, Plaintiffs' allegation that the lack of any length-of-stay restrictions for local hotels unlawfully discriminates against campgrounds is insufficient evidence to declare Ordinance 50-76 and Condition # 4 invalid. Thus, the Court finds that Plaintiffs' bald allegations in their Complaint do not satisfy the burden of proving that Ordinance 50-76 and Condition # 4 are clearly unreasonable, arbitrary, or capricious, and bear no reasonable or substantial relation to the public welfare. As a result, the County's Motion for Summary Judgment on these grounds is granted.

## D. *Equitable Principles of Waiver, Estoppel, and Laches*

The County's Motion for Summary Judgment is granted as to Count Four of Plaintiff's Complaint, as well. In Count Four, Plaintiffs allege that the County has known about the existence of long-term stay visitors to the campground for over forty years and that the County's failure to enforce the fourteen-day limit in spite of such knowledge constitutes a waiver of that rule, or, in the alternative, bars the County from enforcing this ordinance under the principles of laches and estoppel.

While the equities in this case can seem unsettling, given the apparent fact that County Ordinance 50-76 has never been enforced prior to this point, the doctrine in Virginia is nevertheless clear that the equitable principles of waiver, estoppel, and laches do not operate against local governing bodies performing governmental functions. *See, e.g., Hurt v. Caldwell*, 222 Va. 91, 97, 279 S.E.2d 138, 141-42 (1981) (estoppel does not work against the government in Virginia); *Board of Supervisors v. Booher*, 232 Va. 478, 352 S.E.2d 319 (1987) (same); *City of Portsmouth v. City of Chesapeake*, 232 Va. 158, 164, 349 S.E.2d 351 (1986) (laches); *Dick Kelly Enterprises v. City of Norfolk*, 243 Va. 373, 416 S.E.2d 680 (1992) (holding that estoppel does not apply against the government's enforcement of a zoning ordinance). Zoning is a governmental function, and therefore, Count Four of the Complaint is dismissed.

## E. *Injunction against Enforcement of the Fourteen-Day Maximum Stay Rule*

Because summary judgment is granted in favor of the County, the temporary injunction imposed earlier in this case is hereby dissolved.

## IV. *Conclusion*

For the reasons above, the Court hereby orders as follows (1) that the County's Motion to Dismiss be denied; (2) that the Plaintiff's Motion for Summary Judgment be denied on all grounds; (3) that the County's Motion for Summary Judgment be granted as to all grounds.